# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2014

Lyle W. Cayce
Clerk

No. 12-31273

CLYDE BOYETT, et al.,

Plaintiffs-Appellants

v.

REDLAND INSURANCE CO.,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

WIENER, Circuit Judge:

In this diversity case, Plaintiffs-Appellants Clyde Boyett ("Boyett") and his wife, Annie Boyett (together, "the Boyetts"), seek to recover damages for injuries Boyett incurred in an accident. Recovery is sought against Defendant-Appellee Redland Insurance Company ("Redland") under an insurance policy Redland issued to Boyett's employer, Boeuf River Ventures ("Boeuf River"). The district court granted Redland's summary judgment motion after determining that the Boyetts could not avail themselves of uninsured motorist ("UM") benefits provided by Title 22, Section 1295 of the Louisiana Revised Statutes ("Section 1295"). Although the district court concluded that Section

No. 12-31273

1295 applies to the North Carolina accident, it ruled that the offending uninsured machine, a forklift, was not a "motor vehicle" for purposes of that law.  On appeal, the Boyetts contend that the district court erred in precluding UM coverage on the ground that the uninsured forklift that caused the accident was not a "motor vehicle."  We hold that a forklift is a "motor vehicle" within the contemplation of Section 1295's identification of the uninsured or underinsured vehicle, and therefore reverse and remand for further proceedings consistent with this opinion.

## I.  FACTS AND PROCEEDINGS

The material facts in this case are simple.  Boeuf River employed Boyett as a truck driver.  In March 2009, Boyett was driving a flatbed tractor-trailer for Boeuf River hauling a load of lumber for delivery to Carolina Lumber & Brick, Ltd. ("Carolina Lumber") in North Carolina.  Boeuf River maintained insurance on the tractor-trailer under a commercial lines policy which provided "Auto"[1] liability coverage.  The policy, which was issued in Louisiana, did not include any provisions whatsoever relating to UM coverage.  Neither was a waiver of statutory UM coverage executed pursuant to Louisiana law appended to the policy.[2]  The parties agree that Boyett was an insured under that policy.

---

[1] The policy defines an "Auto" to be a "land motor vehicle, 'trailer' or semitrailer designed for travel on public roads; or [a]ny land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."  The term "Auto" does not include "Mobile equipment" such as "forklifts."

[2] An insured may decline statutory UM coverage via a properly executed waiver.  *See* La. Rev. Stat. § 22:1295(1)(a)(i) ("[T]he coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section.") and 22:1295(1)(a)(ii) ("Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.").  The

2

No. 12-31273

The accident occurred in North Carolina when, while an employee of Carolina Lumber was using a forklift to unload the lumber from the tractor-trailer, some of it fell, striking and severely injuring Boyett. He underwent surgery in an attempt to save his right foot. That surgery was unsuccessful, however, and he underwent further surgery to remove the lower portion of his right leg.

The Boyetts filed suit against Redland in the United States District Court for the Western District of Louisiana, alleging that the forklift was an uninsured motor vehicle within the meaning of Section 1295 and that, pursuant to Louisiana law, they were entitled to statutory UM benefits under Redland's policy. Redland answered, then moved for summary judgment, claiming that (1) the policy did not provide *liability coverage* for the North Carolina accident, and (2) Louisiana *statutory UM coverage* was unavailable to the Boyetts because the offending forklift was not an uninsured "motor vehicle" as the term is used in Section 1295(1)(a)(i). The district court granted partial summary judgment in favor of Redland, ruling that the policy did not provide liability coverage.[3] As to statutory UM coverage, however, the court ruled that Redland had failed to meet its summary judgment burden and denied the motion on that issue, reserving to Redland the right to re-urge it at a later time.

The court subsequently held a status conference with the parties to discuss whether the case could be disposed of on motions practice.[4] Following

---

waiver need not be physically attached to the policy. La. Rev. Stat. § 22:1295(1)(a)(ii).

[3] The Boyetts conceded in their opposition memorandum that the policy did not provide *liability* coverage for the accident.

[4] The minute entry memorializing this status conference stated that,

3

that conference, Redland re-urged its motion for summary judgment with respect to statutory UM coverage. The district court considered Redland's re-urged motion, then held that (1) Louisiana's UM statute applies to the Louisiana-issued policy even though the accident occurred in North Carolina, but (2) the offending forklift is not a "motor vehicle" for the purposes of that statute. The district court ruled that the Boyetts were not entitled to statutory UM benefits and dismissed their action. They timely filed a notice of appeal with respect to the district court's holding on statutory UM coverage.

## II.  ANALYSIS

### A.    Standard of Review and Special Louisiana *Erie* Considerations

We review a grant of summary judgment *de novo*, applying the same standard as the district court.[5] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] When reviewing a summary judgment, we

---

[i]n the motion for summary judgment and opposition thereto, the parties are asked to provide more information on the forklift at issue here, specifically whether it is titled and whether it is capable of being driven on a highway. In addition, the parties are asked to address the following issues: (1) what is the controlling definition of a motor vehicle for purposes of the uninsured motorist statute, Louisiana Revised Statute 22:1295; (2) is the forklift a motor vehicle within the uninsured motorist statute; (3) has Title [3]2 ever been used to define a motor vehicle for purposes of Title 22; (4) what does the language of Louisiana Revised Statute 22:1295(1)(a)(iii) mean when it states that "uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state"; and (5) when was the aforesaid language added to the statute.

[5] *Cambridge Integrated Servs. Grp., Inc. v. Concentra Integrated Servs., Inc.*, 697 F.3d 248, 253 (5th Cir. 2012).

[6] Fed. R. Civ. P. 56(a).

construe all the evidence and make all reasonable inferences in the light most favorable to the nonmoving party.[7]  We are "not limited to the district court's reasons for its grant of summary judgment" and "may affirm the district court's summary judgment on any ground raised below and supported by the record."[8]

When, as in this case, subject matter jurisdiction is based on diversity, federal courts apply the substantive law of the forum state—here, Louisiana.[9] To determine the forum state's law, we look first to the final decisions of that state's highest court—here, the Louisiana Supreme Court.[10]  In the absence of a determinative decision by that court on the issue of law before us, we must determine, in our best judgment, how we believe that court would resolve the issue.[11]  As the Louisiana Supreme Court has not addressed whether (1) the state's UM statute applies to out-of-state accidents or (2) a forklift can be the uninsured or underinsured "motor vehicle" within the meaning of Section 1295, the district court had to make an "*Erie* guess" as to these two issues.[12]  On appeal, we must do the same and do so *de novo*.[13]

In making our *Erie* guess in this case, we must employ Louisiana's civilian methodology in the same manner as would the Louisiana Supreme

---

[7] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010).

[8] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008).

[9] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).

[10] *Amer. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

[11] *Holt*, 627 F.3d at 191.

[12] *Id.*

[13] *Id.*

Court.[14] As we have previously explained, "[u]nder Louisiana's Civil Code, the only authoritative 'sources of law are legislation and custom.' "[15] Indeed, in Louisiana "[l]egislation is a solemn expression of legislative will."[16] Thus, we must look first to Louisiana's Constitution, its codes, and statutes, because the " 'primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts.' "[17] Unlike in common law systems, "[s]tare decisis is foreign to the Civil Law, including Louisiana."[18] Nevertheless, "in cases such as this[,] we are guided by decisions rendered by the Louisiana appellate courts, particularly when

---

[14] *Amer. Int'l Specialty*, 352 F.3d at 260.

[15] *Id.* at 260-61 (citing La. Civ. Code art. 1; *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992); A.N. Yiannopoulos, *Civil Law System* 117 (2d ed. 1999)).

[16] La. Civ. Code art. 2; *Transcon. Gas*, 953 F.2d at 988.

[17] *Transcon. Gas*, 953 F.2d at 988 (quoting Albert Tate, Jr., *Techniques of Judicial Interpretation in Louisiana,* 22 La. L. Rev. 727 (1962)); *see also* Alvin B. Rubin, *Hazards of a Civilian Venturer in Federal Court: Travel and Travail on the* Erie Railroad, 48 La. L. Rev. 1369 (1988).

[18] *Amer. Int'l Specialty*, 352 F.3d at 260 (quoting *Transcon. Gas*, 953 F.2d at 988; citing *Ardoin v. Hartford Acc. & Indem. Co.*, 360 So. 2d 1331, 1334 (La.1978)) (internal quotation marks omitted).

numerous decisions are in accord on a given issue"—i.e., *jurisprudence constante*[19]—"but we are not strictly bound by them."[20]

## B.    Whether the Louisiana UM Statute Applies to Out-of-State Accidents

On appeal, the Boyetts assert that the district court "correctly" determined that the UM statute applies to this accident, even though it occurred in North Carolina. Although it did not appeal that holding, Redland insists that Section 1295 does not extend to out-of-state accidents.[21] If Redland is correct on this point, then we need not reach the Boyetts' contention that a forklift can be an uninsured or underinsured motor vehicle within the meaning of the statute.  We therefore consider first whether the district court correctly

---

[19] The Louisiana Supreme Court has succinctly summarized the civilian doctrine of *jurisprudence constante* as follows:

> [W]hile a single decision is not binding on our courts, when a series of decisions form a constant stream of uniform and homogenous rulings having the same reasoning, *jurisprudence constante* applies and operates with considerable persuasive authority.  Thus, prior holdings by this court are persuasive, not authoritative, expressions of the law.

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 256 (La. 2011) (internal citations, quotation marks and brackets omitted).

[20] *Transcon. Gas*, 953 F.2d at 988; Rubin, 48 La. L. Rev. at 1378-79.

[21] Because Redland (1) raised this argument before the district court, (2) was the prevailing party on summary judgment, and (3) is not seeking to alter or amend the judgment in any way, it was not obligated to cross-appeal to raise this argument as an alternative ground for affirming the district court's ultimate holding that the Boyetts are not entitled to statutory UM coverage.  *See Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 235 (5th Cir. 2012). Thus, we may consider Redland's contention that Section 1295 does not apply to out-of-state accidents.

concluded that the statute may apply to accidents that occur outside of Louisiana.

"Louisiana statutory law provides for UM coverage for the purpose of providing 'full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance.' "[22] Thus, "UM coverage will be read into any automobile liability policy 'unless validly rejected.' "[23] As it is undisputed that Redland's policy was issued in Louisiana and that there was no valid rejection of statutory UM coverage, the Boyetts are entitled to statutory UM coverage by operation of law *unless* they are otherwise divested of or precluded from asserting such entitlements.

In support of its claim that Louisiana statutory UM coverage is not available for out-of-state accidents, Redland points to Section 1295(1)(a)(iii), which states: "This Subparagraph and its requirements for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state."  Redland argues that this provision serves as a "geographic limitation" which prevents the UM statute from applying to accidents that occur outside of Louisiana.  The district court rejected this characterization of Section 1295(1)(a)(iii), concluding that it "will only come into play where there is a foreign policy and each prong of the conjunctive amendment is met."  Both the history and the plain language of the UM statute confirm the propriety of the district court's conclusion that Section 1295 may extend to out-of-state accidents.[24]

---

[22] *Gray v. Am. Nat'l Prop. & Cas. Co.*, 977 So. 2d 839, 845 (La. 2008).

[23] *Id.*  The amount of statutory UM coverage must be "not less than the limits of bodily injury liability provided by the policy."  La. Rev. Stat. § 22:1295(1)(a)(i).

[24] "In Louisiana, the starting point in ascertaining statutory meaning is the language of the statute itself."  *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 529 F.3d 569, 573 (5th

No. 12-31273

Prior to 1987, the UM statute[25] explicitly addressed "insurance [policies] delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state."[26]  The Louisiana Supreme Court analyzed the scope of this language in *Snider v. Murray*.[27]  In *Snider*, the relevant insurance policy was issued and delivered in Texas by a Texas agent to the insured—Jerry Snider ("Snider")—who was domiciled in Texas; the vehicle listed in the policy was principally garaged in Texas.  Snider then moved to Louisiana, where the accident occurred.  Snider's widow and children sought to recover under the predecessor of Section 1295.[28]  Focusing on the plain language of the statue, which "by its express terms purport[ed] to affect *only*" insurance policies "delivered or issued for delivery in" Louisiana, the court ruled that the statute did not extend to policies issued in other states.

---

Cir. 2008) (citing *City of New Orleans v. La. Assessors' Ret. and Relief Fund*, 986 So. 2d 1, 17 (La. 2007)).  A statute's words are "given their generally prevailing meaning." La. Civ. Code art. 11; La. Rev. Stat. § 1:3.  "When the law is "clear and unambiguous and its application does not lead to absurd consequences," we apply it as written.  La. Civ. Code art. 9.  "When the language of the law is susceptible of different meanings," however, "it must be interpreted as having the meaning that best conforms to the purpose of the law."  La. Civ. Code art. 10; *Pumphrey v. City of New Orleans*, 925 So. 2d 1202, 1209 (La. 2006).  In essence, "the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect." *Keenan*, 529 F.3d at 573 (quoting *Pumphrey*, 925 So. 2d at 1209) (internal quotation marks omitted).

[25] The UM statute was originally numbered La. Rev. Stat. § 22:1406.  It was redesignated as La. Rev. Stat. § 22:680 pursuant to 2003 La. Acts No. 456, § 3.  Effective January 1, 2009, it was again renumbered to La. Rev. Stat. § 22:1295 pursuant to 2008 La. Acts No. 415, § 1.  *See Scarborough v. Randle*, 109 So. 3d 961, 963 n.1 (La. App. 3d Cir. 2013).

[26] *See Snider v. Murray*, 461 So. 2d 1051, 1052 n.1 (La. 1985) (quoting prior version of the UM statute, then codified at La. Rev. Stat. § 22:1406(D)(1)).

[27] *Id.*

[28] *Id.* at 1051-52.

9

Under Louisiana law, the *Snider* plaintiffs were thus barred from recovering.[29] The court nevertheless ventured, in dicta, that "[p]erhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana."[30]

Soon thereafter, the Louisiana Legislature did just that, adding present Section 1295(1)(a)(iii)[31] and thereby superseding *Snider*. Consequently, "now Louisiana's UM law **can** [sic] be applied to foreign insurance policies in multistate cases when the accident occurs in Louisiana and involves a Louisiana resident."[32] Subsequent Louisiana opinions have recognized that the adoption of Section 1295(1)(a)(iii) "was intended to extend geographically the scope of UM coverage beyond cases where the policy was issued in Louisiana and the vehicle was garaged in Louisiana."[33] Section 1295(1)(a)(iii) thus expands the reach of Louisiana statutory UM coverage to out-of-state policies when the accident occurs in Louisiana and involves a Louisiana resident. It does not address Louisiana-issued policies, however, as they are already subject to Section 1295(1)(a)(i).[34] Left open was whether Section 1295(1)(a)(i) applies to accidents that occur outside of Louisiana.

---

[29] *Id.* at 1053 (emphasis in original).

[30] *Id.* at 1053-54.

[31] At the time this language was added to the statute, the subsection was codified at La. Rev. Stat. § 22:1406(D)(1)(a)(iii). *See supra* n.25.

[32] *Champagne v. Ward*, 893 So. 2d 773, 779-80 (La. 2005) (bold in original).

[33] *Nelson v. Robinson*, 10 So. 3d 356, 359 (La. App. 2d Cir. 2009); *see also Willett v. Nat'l Fire & Marine Ins. Co.*, 594 So. 2d 966, 969 (La. App. 3d Cir. 1992) (explaining that after amendment the UM statute "is no longer limited in its effect to only those policies that are delivered or issued for delivery in this state").

[34] *See Wendling v. Chambliss*, 36 So. 3d 333, 339 (La. App. 1 Cir. 2010) (Downing, J.,

No. 12-31273

Although the Louisiana Supreme Court has never addressed whether the UM statute is applicable only when the accident occurs within the state, we are satisfied that, if confronted with this issue, that court would reject Redland's argument that Section 1295(1)(a)(iii) serves as a "geographic limitation." First, well before the legislature's 1987 amendment that added Section 1295(1)(a)(iii), the Louisiana Supreme Court had recognized that the statute "embodies a strong public policy"[35] and therefore must be "liberally construed to carry out [its] objective of providing reparation for those injured through no fault of their own."[36] As discussed above, nothing about the context of Section 1295(1)(a)(iii)'s adoption suggests that it was intended to restrict—rather than expand—the Louisiana UM law in any way. Indeed, pre-Section 1295(1)(a)(iii) case law held that the UM statute reads coverage into policies issued in Louisiana even when an accident occurs outside of the state.[37]

Second, nothing in the plain language of Section 1295(1)(a)(iii) expressly limits the ambit of the statute to accidents that occur in Louisiana. Third, reading Section 1295(1)(a)(iii) in the manner Redland has suggested would categorically prevent Louisiana's UM law from ever applying to out-of-state accidents, even if the accident involved only Louisiana residents, Louisiana

---

concurring) (explaining that Section 1295(1)(a)(iii) is an "exception . . . to the applicability of Louisiana's uninsured motorists law only to policies issued in this state").

[35] *A.I.U. Ins. Co. v. Roberts*, 404 So. 2d 948, 949 (La. 1981).

[36] *Hoefly v. Gov't Emps. Ins. Co.*, 418 So. 2d 575, 578 (La. 1982) (citing *Niemann v. Travelers Ins. Co.*, 368 So. 2d 1003 (La. 1979); *Elledge v. Warren*, 263 So. 2d 912 (La. App. 3d Cir. 1972); *Valdez v. Fed. Mut. Ins. Co.*, 272 Cal. App. 2d 223, 77 Cal. Rptr. 411 (1969)).

[37] *See* William Shelby McKenzie & H. Alston Johnson III, 15 *La. Civil Law Treatise* § 4:4 (4th ed. 2012) ("The Louisiana UM statute is applicable to a policy issued in Louisiana on an automobile registered in Louisiana even though the accident occurs in another state.") (citing *Comeaux v. Penn. Gen. Ins. Co.*, 490 So. 2d 1191, 1193 (La. App. 3d Cir. 1986)).

vehicles, and Louisiana insurance policies.   Motor vehicle accidents with contacts to multiple states are common, so there is no basis to conclude that the legislature intended to waive Louisiana's  interest in having its law apply to a multistate accident with significant Louisiana contacts.

The Louisiana Supreme Court, furthermore, has recognized that a foreign state's UM law may govern an accident that occurs *within* Louisiana.[38] Concomitantly, it follows that an accident that occurs *outside of* Louisiana does not vitiate Louisiana's interest in that accident.   As there is no on-point decision from the Louisiana Supreme Court to the contrary,[39] the district court was correct in concluding that Section 1295(1)(a)(iii) does not affect Louisiana-issued insurance policies, all of which are governed instead by Section 1295(1)(a)(i).[40]   That court correctly held that Louisiana's UM statute may apply to motor vehicle accidents that occur outside of Louisiana.

## C.     Whether a Forklift is a "Motor Vehicle"

We begin with the language of the statute to determine whether a forklift may be a "motor vehicle" for purposes of Section 1295.   Although Section 1295(1)(a)(i) lacks a definitions section, it states that mandatory UM coverage

---

[38] *See Champagne*, 893 So. 2d at 786 (finding that, after conducting a conflict-of-law analysis, Mississippi UM law applied even though the accident occurred in Louisiana).

[39] To the extent that Redland relies on language from an intermediate Louisiana court of appeal decision to argue that Section 1295(1)(a)(iii) is a "geographic limitation," such language is at best dicta.   *See Triche v. Martin*, 13 So. 3d 649, 652 (La. App. 1 Cir. 2009) (holding that Section 1295(1)(a)(iii) "plainly states that the statute's application is limited to accidents occurring 'in this state' involving a resident of this state") (emphasis omitted).   In *Triche*, the relevant policy was not delivered or issued for delivery in Louisiana, and the accident did not occur in Louisiana.   *Id.* at 649-50.   Thus, the insured could not satisfy the requirements of either Section 1295(1)(a)(i) or 1295(1)(a)(iii).

[40] Whether Louisiana's UM law in fact applies in this multistate case depends on a conflict-of-law analysis, which is not at issue in this appeal.   *See Champagne*, 893 So. 2d at 786.

shall be read into "automobile liability insurance [policies] . . . delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state."[41]  Such mandatory UM coverage protects persons "who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom."[42]  The UM statute does not define "motor vehicle," but it does clearly distinguish between (1) the *insured* motor vehicle and (2) the *uninsured* (or underinsured) vehicle.  When defining the former, the UM statute qualifies the term "motor vehicle" with the phrase "designed for use on public highways and required to be registered in this state."  When defining the latter, however, it refers only to "motor vehicles" and omits the modifying language.  Stated differently, in the set of "motor vehicles," only the sub-set of those "designed for use on public highways and required to be registered in this state" qualify to be the insured motor vehicle.  In stark contrast, the uninsured or underinsured vehicle may be any vehicle from the entire set of "motor vehicles"; it is not restricted to membership in any sub-set.

The district court concluded, at least implicitly, that the statute's differentiation between the machines that qualify to be the insured motor vehicle and those that qualify to be the uninsured motor vehicle was deliberate, and proceeded to analyze the forklift under the meaning of " 'motor vehicle,' as the term is used without modification."  The Boyetts do not directly address the difference between the two definitions of "motor vehicle," but they do argue in terms of the unmodified usage of that term when identifying the uninsured

---

[41] La. Rev. Stat. § 22:1295(1)(a)(i).

[42] *Id.*

vehicle. Redland counters that "the only reasonable construction of the statute is to apply the modifying language to the term 'motor vehicle' wherever it is used." As forklifts generally are not registered and are not required to have the safety equipment necessary for a vehicle to operate legally on public highways—*e.g.*, headlamps, tail lamps, stop lamps, turn signals and rearview mirrors—adopting Redland's position would exclude a forklift from the UM statute's scope.[43]

"When interpreting a statute, all parts of a statute should be given effect, and an interpretation making any part superfluous or meaningless should be avoided."[44] With this axiom of statutory interpretation in mind, we observe that accepting Redland's definition of "motor vehicle" would make the modifying phrase in Section 1295(1)(a)(i) superfluous. If the legislature meant to restrict both the insured vehicle and the uninsured vehicle to the sub-set of vehicles "designed for use on public highways and required to be registered in this state," then it need not have included the restrictive or limiting language that it employs to describe *only* those vehicles that qualify as *insured* motor vehicles. Thus, to give full effect to all words of Section 1295(1)(a)(i), so that none is superfluous, we must conclude that the legislature did not intend to limit the statute's protective scope only to damages caused by those uninsured or underinsured vehicles that are "designed for use on public highways and required to be registered in this state."

The Louisiana Supreme Court's repeated exhortations to construe the UM statute in favor of insureds support this interpretation: The legislature

---

[43] *See, e.g.*, La. Rev. Stat. §§ 32:53, 32:303, 32:304, 32:306, and 32:354.

[44] *Champagne*, 893 So. 2d at 786 (citing *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 650 So. 2d 1148 (La. 1995)).

meant exactly what it wrote.[45] Thus, it must be presumed to have recognized that motor vehicles *not designed* for use on public roads still pose a risk of "bodily injury . . . or death" when and if they are actually *operated* on those roads, leading that body to protect insured drivers and their passengers from the risk that those "other" motor vehicles might turn out to be uninsured or underinsured. Thus, validating the asymmetrical treatment of insured versus uninsured motor vehicles in the plain language of the UM statute does not produce an absurd result; to the contrary, *not* validating it certainly could.

Having concluded that the legislature did not intend to define "motor vehicle" as Redland suggests, we now must determine whether the uninsured forklift in this case is in fact a "motor vehicle" under the Louisiana UM statute. Given Section 1295's omission of any definition of "motor vehicle," we turn to the canons of statutory interpretation to inform our *Erie* guess on this point.[46] When there is no binding Louisiana law on point, we look to other persuasive legal authorities.[47]

We first note that the Louisiana Supreme Court has not been presented with the question of what constitutes a motor vehicle for the purposes of the UM statute; neither has it been asked to define the term "motor vehicle" as used in that statute. In the absence of a controlling Louisiana Supreme Court case, one source to which we may turn is other portions of the Louisiana Revised Statutes that are pertinent to such insurance coverage. Although the

---

[45] *See Gray*, 977 So. 2d at 845; *see also Hoefly*, 418 So. 2d at 578; *A.I.U. Ins. Co.*, 404 So. 2d at 949.

[46] *Amer. Int'l Specialty*, 352 F.3d at 260; *see also supra* n.24.

[47] *Amer. Int'l Specialty*, 352 F.3d at 260.

Louisiana Highway Regulatory Act ("LHRA")[48] contains the provisions governing motor vehicles and traffic regulation, and includes a definition of "motor vehicle," Section 1 of the LHRA explicitly states that such definition applies only when "used in this Chapter."[49]  "This Chapter" refers to the LHRA, which does not encompass the UM statute.

Both the Boyetts and Redland nevertheless encourage us to scrutinize the definition of "motor vehicle" within the LHRA in reaching our holding today.  We recognize that some decisions of the intermediate appellate courts of Louisiana, as well as the district court's decision on summary judgment in this case, have been guided by the LHRA because it purportedly "indicat[es] the legislature's comprehension of the meaning of the term 'Motor Vehicle.' "[50] Assuming, without deciding, that the Louisiana Supreme Court would be inclined to consult the LHRA, we acknowledge that its definitions are broad enough to include forklifts.  First, "vehicle" is defined in the LHRA as "every device by which persons or things may be transported upon a public highway or bridge, except devices moved by human power or used exclusively upon stationary rails or tracks.  A bicycle or a ridden animal shall be a vehicle, and

---

[48] La. Rev. Stat. §§ 32:1 to 32:399.

[49] La. Rev. Stat. § 32:1.

[50] *Thibodeaux v. St. Paul Mercury Ins. Co.*, 242 So. 2d 112, 114 (La. App. 3d Cir. 1971) (relying on the LHRA's definition of "motorcycle"—"every motor vehicle having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground, but excluding a tractor"— to conclude that a motorcycle is a "motor vehicle" within the meaning of the UM statute because "[t]o take a more restricted view [that a motorcycle is not a motor vehicle] would render the uninsured motorist protection practically worthless"); *see also Lee v. Davis*, 897 So. 2d 753, 756 (La. App. 5th Cir. 2005) (holding, citing *Thibodeaux* and the LHRA, that a bicycle is not an uninsured "land motor vehicle" or "automobile" under the UM provisions of an insurance policy).

a trailer or semitrailer shall be a separate vehicle."[51]  In addition, the LHRA defines a "motor vehicle" as "every vehicle which is self-propelled, and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, but excluding a motorized bicycle."[52] Combining the LHRA's definition of "vehicle" with its definition of "motor vehicle" produces a very broad definition of "motor vehicle": *every self-propelled device by which persons or things can be transported upon a public highway*. Here, the forklift (1) was self-propelled, (2) carried things (lumber), (3) was physically capable of driving on a public road,[53] and (4) is no less a "device" than is a car or truck.  Thus, the LHRA's definitions support the conclusion that a forklift is a "motor vehicle" for the purposes of identifying the uninsured or underinsured machine under Section 1295.

Redland largely ignores the LHRA definition of "motor vehicle" and instead cites the LHRA requirements that motor vehicles must satisfy to operate on Louisiana streets and highways, such as lights and mirrors.[54] Because the forklift lacks those features, insists Redland, it was not designed for operation on the streets and thus is not a "motor vehicle" for UM purposes.

Redland's argument fails for two reasons.  First, it assumes that the uninsured motor vehicle must be "designed for use on the public highways and required to be registered in this state," a position we have already rejected.

---

[51] La. Rev. Stat. § 32:1(92).

[52] La. Rev. Stat. § 32:1(40).

[53] Boyett attests that he saw the Carolina Lumber employee drive the forklift on a public road before the accident.  On summary judgment, we construe all evidence in the light most favorable to the nonmoving party—here, the Boyetts.

[54] *See, e.g.*, La. Rev. Stat. §§ 32:51, 32:53 and 32:54.

17

No. 12-31273

Second, the statutes that Redland cites provide additional requirements that must be satisfied before a "motor vehicle" may be operated *legally* on Louisiana streets and highways. If the forklift did not meet those requirements, that means only that it could not be operated legally on public roads, not that it fails to come within the definition of "motor vehicle."

Turning to the *liability* portion of its policy and citing case law that interprets other provisions of the UM statute, Redland urges that we limit statutorily provided UM coverage on the basis of provisions within the *liability* portion of a contested insurance policy if such policy does not address UM coverage. According to Redland, the imposition of statutory UM coverage is a "judicial reformation of an insurance policy" that "thwart[s] the intentions of the parties." Consequently, Redland asserts, a contract of insurance may be reformed only to the minimum extent necessary to bring the policy in compliance with Louisiana law. As a result, concludes Redland, because its policy excludes "mobile equipment"—which includes "forklifts"—from *liability coverage*, forklifts should be excluded from the statutorily imposed *UM coverage*.

In its efforts to support this position, Redland first emphasizes that, to determine whether a person is an "insured" for the purposes of the UM statute, one must look to the liability policy's delineation of who is an insured under that policy.[55] Second, Redland observes by analogy that the Louisiana Court of Appeal for the First Circuit has employed language contained in the *liability* portions of policies to limit an insured's ability to recover punitive damages under the UM statute.[56]

---

[55] *See, e.g.*, *Carrier v. Reliance Ins. Co.*, 759 So. 2d 37 (La. 2000); *Magnon v. Collins*, 739 So. 2d 191 (La. 1999).

[56] *See Fontana v. La. Sheriff's Auto. Risk Program*, 697 So. 2d 1030, 1037 (La. App.

No. 12-31273

Regarding its first argument, Redland is correct in noting that Section 1295 expressly states that an "insured" must be a person "named in the policy," thereby requiring one to begin with the language of the liability policy to determine who may be eligible for statutory UM benefits.[57] It does not logically follow, however, that the liability portions of a policy should cabin our interpretation of UM coverage in ways not specifically enumerated in Section 1295.

With respect to Redland's second argument, the jurisprudence on which it relies is no longer good law in light of amendments to the UM statute which were enacted subsequent to the cases relied on by Redland but prior to the issuance of the instant policy and the occurrence of the instant accident. Effective September 6, 1998, "selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance"—that is, any limit on a party's entitlement to recover punitive damages may only be obtained by properly executing a waiver in strict compliance with Section 1295(1)(a)(i) and (1)(a)(ii).[58] And, the Louisiana Supreme Court has stated that Section 1295 "imposes UM coverage in [Louisiana] notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment," so reading terms explicitly regarding liability into statutorily imposed UM coverage would vitiate Section 1295's "strong public policy." For all of these reasons, we decline to impose limits on statutory UM coverage on the basis of the *liability* provisions of a policy, as Redland would have us do.

---

1st Cir. 1997) (citing *Bauer v. White*, 532 So. 2d 506 (La. App. 1st Cir. 1988)).

[57] *See* La. Rev. Stat. § 22:1295(1)(a)(i).

[58] *See Duncan*, 950 So. 2d at 548.

No. 12-31273

In an effort to identify all other authority that in some way might inform our decision, the parties have invited our attention to a plethora of cases implicating either motor vehicle insurance policies or UM coverage generally. Some of those decisions interpret language contained within the UM portions of the relevant policies;[59] others address the meaning of "forklift" *vis-à-vis* insurance policies' definitions of specific terms when UM coverage was not at issue.[60]  Another line of jurisprudence instructs that insurance policies may not exclude particular classes of vehicles from UM coverage because such exclusions violate public policy.[61]  Still others are decisions of non-Louisiana courts interpreting policy language or foreign statutes.[62] Ultimately, though,

---

[59] *See, e.g.*, *Curtis v. Allstate Ins. Co.*, 631 F.2d 79, 80-81 (5th Cir. 1980) (enforcing a territorial limitation provision); *Lee*, 897 So. 2d at 756 (holding that a bicycle was not within a policy's definition of "land motor vehicle" or "automobile"); *Thibodeaux*, 242 So. 2d at 113-14 (holding that a motorcycle was within a policy's definition of "automobile").

[60] *See, e.g.*,*Williams v. Western World Ins. Co.*, 685 So. 2d 529, 531 (La. App. 3d Cir. 1996) (holding that a forklift was not a "highway vehicle" under policy language); *Dauthier v. Pointe Coupee Wood Treating*, 560 So. 2d 556, 558 (La. App. 1st Cir. 1990) (holding that a forklift was "mechanical device" and not an "auto" as those terms were defined in an insurance policy).

[61] *Mednick v. State Farm Mut. Auto. Ins. Co.*, 31 So. 3d 1133, 1136 (La. App. 5th Cir. 2010) (holding that the language of an insurance policy cannot thwart the legislature's purpose by attempting to exclude UM coverage for "motor vehicles" owned by government); *Posey v. Commercial Union Ins. Co.*, 332 So. 2d 909, 913 (La. App. 2d Cir. 1976) (same with respect to motorcycles).

[62] *See, e.g.*, *Gibboney v. Johnson*, 2006 WL 2831028, at *6 (Ohio App. 8th Dist. 2006) (interpreting Ohio UM law to conclude that forklifts are "motor vehicles"); *Olson v. U.S. Fidelity & Guar. Co.*, 549 N.W.2d 199, 201 (S.D. 1996) (relying on the policy definition of "motor vehicle," which differs from the Louisiana UM statute); *Aetna Cas. & Sur. Co. v. Jewett Lumber Co.*, 209 N.W.2d 48, 49-50 (Iowa 1973) (interpreting policy language unlike the statute at issue in this case); *Cal. Packing Corp. v. Transp. Indemn. Co.*, 80 Cal. Rptr. 150, 153 (Cal. Ap. 1969) (holding that a "forklift" was covered by the policy language, in part because the parties conceded a forklift was a "land motor vehicle").

20

No. 12-31273

because all these cases are inapposite or distinguishable, we do not find them persuasive or even helpful.

Having scoured Louisiana's primary sources of law and its jurisprudence for guidance, we turn finally to the two-word term "motor vehicle" itself. A forklift is (1) a vehicle (2) propelled by its own motor, so it intuitively follows that a forklift is a "motor vehicle." Likewise, dictionary definitions of "motor vehicle" are broad enough to encompass the forklift in this case.[63] Finally, we remain mindful that the public policy goal motivating the enactment of the UM statute was the protection of innocent tort victims,[64] requiring that we "liberally construe[ ]"[65] the statute in favor of coverage, "while the statutory exceptions to UM coverage must be strictly construed."[66] We hold, therefore, that a forklift is an uninsured motor vehicle for purposes of Section 1295. We take comfort in the knowledge that such a construction of "motor vehicle" comports with the Louisiana Supreme Court's expression that "Louisiana statutes and jurisprudence evince a strong public policy in favor of UM coverage."[67]

---

[63] *See Webster's Third New Int'l Dictionary Unabridged* 1476 (2002) ("[A]n automotive vehicle not operated on rails, *esp*: one with rubber tires for use on highways."); American *Heritage Dictionary of the English Language* 1148 (4th ed. 2000) ("A self-propelled wheeled conveyance, such as a car or truck, that does not run on rails.").

[64] *Duncan v. USAA Ins. Co.*, 950 So. 2d 544, 548 (La. 2006); *A.I.U. Ins. Co.*, 404 So. 2d at 949.

[65] *Gray*, 977 So. 2d at 845.

[66] *Id.*

[67] *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 819 (La. 2002).

21

No. 12-31273

## III.  CONCLUSION

We agree with the district court's holding that Louisiana's UM statute may apply to out-of-state accidents.  We conclude, however, that a forklift is a "motor vehicle" for the purposes of the part of Title 22, Section 1295 of the Louisiana Revised Statutes that identifies the uninsured or underinsured motor vehicle.  We therefore reverse the district court's judgment dismissing the Boyetts' action and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

No. 12-31273

W. EUGENE DAVIS, Circuit Judge, dissenting.

I respectfully dissent from the majority's decision holding that a forklift qualifies as a "motor vehicle" under Louisiana's uninsured motorist ("UM") statute, La. Rev. Stat. § 22:1295. I am persuaded that the definition of "motor vehicle" under La. Rev. Stat. § 22:1295(1)(a)(i) necessarily excludes all vehicles which are not designed for use on public highways and required to be registered in Louisiana, and thus excludes forklifts. I reach this conclusion based on the statutory language of Section 1295 and on related Louisiana statutes.

Section 1295(1)(a)(i) provides, in relevant part:

> (1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any **motor vehicle designed for use on public highways and required to be registered in this state** or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured **motor vehicles** because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. **In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900**, unless economic-only coverage is selected as authorized in this Section. . . . (emphasis added)

23

No. 12-31273

It seems clear to me that the Louisiana legislature intended all instances of "motor vehicle" in this statute to be defined as one "designed for use on public highways and required to be registered in this state."  Within the same statutory subsection, there is no need to repeat the definition each time the term "motor vehicle" is used.  Moreover, this reading is consistent with related Louisiana statutes mandating liability insurance.

The Louisiana Motor Vehicle Safety Responsibility Law ("LMVSRL"), La. Rev. Stat. § 32:851 *et seq*., requires an owner to obtain minimum liability coverage for "[e]very self-propelled motor vehicle registered in this state," subject to certain exceptions.[1]  Thus, even though the LMVSRL defines "motor vehicle" broadly to include "every self-propelled vehicle (except traction engines, road rollers, farm tractors, tractor cranes, power shovels, and well drillers) and every vehicle which is propelled by electric power obtained from overhead wires but not operated upon rails,"[2] the compulsory liability insurance requirement applies only to vehicles which must be registered under Louisiana law.  La. Rev. Stat. § 32:851(12) provides that "'Registration' includes a registration certificate or certificates and registration plates issued under the laws of this state pertaining to the registration of motor vehicles."

Louisiana's vehicle registration laws are found in Title 47 of the Louisiana Revised Statutes.  Most relevantly, La. Rev. Stat. § 47:501(A) provides: "Every owner of a motor vehicle, trailer, or semitrailer, or other vehicle **intended to be operated upon the public highways in this state** shall, before operating the same, apply to the secretary of the Department of Public Safety and Corrections for and obtain the registration thereof and pay

---

1 La. Rev. Stat. § 32:861(A)(1).

2 La. Rev. Stat. § 32:851(4).

24

the state registration or license tax imposed by this Chapter, . . ." (emphasis added).  There are certain exemptions to registration even for vehicles which occasionally operate on the highway, but the essential point is that if a vehicle is not intended to be operated upon the public highways, it is not subject to the general motor vehicle registration laws and thus not subject to the requirement to obtain compulsory liability insurance.

Taking the statutory framework as a whole, it is clear to me that a vehicle which is not designed for highway use *and* not required to be registered is not subject to the compulsory liability insurance requirement under La. Rev. Stat. § 32:861.  This is precisely the exemption to UM coverage set out in Section 1295(1)(a)(i) ("any motor vehicle designed for use on public highways and required to be registered in this state").  UM coverage is thus intended to fill a coverage gap in the event another driver fails to obtain mandatory liability insurance as required by the LMVSRL, La. Rev. Stat. § 32:851 *et seq*.  Indeed, the minimum liability limits for UM coverage under Section 1295(1)(a)(i) are established by reference to La. Rev. Stat. § 32:900, part of the LMVSRL.

In short, I conclude from the statutory framework that the Louisiana legislature intended UM coverage to mirror the mandatory coverage required by the LMVSRL.  To read the second instance of "motor vehicle" in Section 1295(1)(a)(i) broadly to include even vehicles not designed for use on public highways and not required to be registered in Louisiana would expand the scope of UM coverage far beyond the scope of mandatory liability coverage.  Thus, I remain convinced that the phrase "motor vehicle" in Section 1295(1)(a)(i) must be interpreted in all instances as being limited to one "designed for use on public highways and required to be registered in this state." Accordingly, I would affirm the district court's holding that the forklift

25

was not a "motor vehicle" and no UM coverage was available under Redland's policy.