## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-51080

NORTHFIELD INSURANCE COMPANY,

       Plaintiff - Appellant

v.

CHARLES HERRERA, doing business as Austin Elevator Consultants,

       Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-553

Before KING, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

      Charles Herrera purchased a commercial general liability insurance policy from Northfield Insurance Company for his elevator service and maintenance business. When an employee of a company that had hired Herrera suffered an injury on one of the elevators serviced by him, the employee sued Herrera. Northfield argues that the policy excludes coverage for injuries to employees of those who hire Herrera for services, and therefore,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-51080

Northfield is not obligated to defend or indemnify Herrera for this claim. We REVERSE and REMAND for entry of judgment in favor of Northfield.

### I.

Charles Herrera runs an elevator service and maintenance business under the name "Austin Elevator Consultants." In September 2013, Herrera purchased a year-long commercial general liability policy with Northfield Insurance Company ("Northfield"). Under the policy, Northfield agreed to defend and indemnify Herrera against lawsuits seeking damages for bodily injury or property damage. The policy is amended by an endorsement, titled "EXCLUSION – INJURY TO EMPLOYEES, WORKERS OR CONTRACTED PERSONS OF INSUREDS OR CONTRACTED ORGANIZATIONS." The endorsement includes the following "Contracted Persons" exclusion:

> **Bodily Injury To Employees, Workers Or Contracted Persons Of Insureds Or Contracted Organizations**
>
> This insurance does not apply to "bodily injury" to:
>
> **(1)** Any person who is an "employee", "leased worker", "temporary worker", "volunteer worker" of you or any insured arising out of and in the course of:
>
> > **(a)** Employment by you or any insured; or
> >
> > **(b)** Performing duties related to the conduct of your or any insured's business;
>
> **(2)** Any person who contracted with you or with any insured for services arising out of and in the course of performing duties related to the conduct of your or any insured's business;
>
> **(3)** Any person who is employed by, is leased to or contracted with any organization that:
>
> > **(a)** Contracted with you or with any insured for services; or
> >
> > **(b)** Contracted with others on your behalf for services;

No. 17-51080

arising out of and in the course of employment by that organization or performing duties related to the conduct of that organization's business; or

**(4)** The spouse, child, parent, brother or sister of any of those persons as a consequence of the "bodily injury" described in Paragraphs **(1), (2)** or **(3)** above.

For the purposes of this exclusion, contracted with includes contracting with an oral or written contract.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

During the policy period, Austin Energy and Herrera entered into a contract under which Herrera would service, inspect, and maintain elevators in Austin Energy's Sandhill Energy Center ("SEC"). In March 2014, Thomas McCoy, an Austin Energy employee, was injured on a SEC elevator and sued Herrera in a Texas state court for negligence. Although Northfield defended Herrera in the state-court litigation under a reservation of rights, Northfield also filed the instant action, seeking a declaratory judgment that it has no duty to defend or indemnify Herrera. It is undisputed that McCoy was an Austin Energy employee at the time of his injury; that his damages arose out of his employment with Austin Energy; and that his injury was sustained during that employment.

The parties filed cross-motions for summary judgment, in which their sole dispute revolved around the meaning of paragraph (3)(a). Herrera argued that paragraph (3)(a) unambiguously applied only to so-called downstream employees, i.e., to his subcontractors and their employees. Northfield argued that the exclusion plainly ran downstream *and* upstream, thus also excluding

No. 17-51080

coverage for injuries to employees of businesses who hired Herrera, such as Austin Energy.

The district court agreed with Herrera, granted his motion, and denied Northfield's. It read paragraph (3)(a) in the context of the preceding paragraphs and observed that the first two paragraphs "exclude coverage for bodily injury to (1) Herrera's employees and workers, and (2) Herrera's subcontractors performing duties related to his business." "Following the logical progression," the district court reasoned, the next paragraph unambiguously "excludes coverage for bodily injury to employees and workers of Herrera's subcontractors [(paragraph (3)(a))] and their subcontractors [(paragraph (3)(b))]." The district court further observed that Northfield's parent company, Northland Insurance Company, had offered "this exact interpretation in another lawsuit involving the same exclusion." *See Northland Ins. Co. v. Doval Remodeling, Inc.*, No. 13-13192-GAO, 2015 WL 1243520, at *2 (D. Mass. Mar. 18, 2015).

The district court also noted that Northfield's "expansive reading" of the exclusion would render its service "illusory," reasoning that "service-providing businesses like Herrera['s]" purchase general liability insurance to cover bodily injuries to the employees of organizations that hire them. Northfield appeals the judgment below.

## II.

We review "a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In a diversity case such as this one, we apply state substantive law"—

here, as both parties agree, Texas law. *See Wiltz v. Bayer CropScience, L.P.*, 645 F.3d 690, 695 (5th Cir. 2011).

To determine Texas law, we first consider the decisions of the Texas Supreme Court. *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 414 (5th Cir. 2017). In the absence of definitive decisions from the Texas Supreme Court on the issues, we "must determine, in our best judgment, how we believe that court would resolve the issue." *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014). "In making such a determination, we 'may look to the decisions of intermediate appellate state courts for guidance.'" *ExxonMobil Corp.*, 868 F.3d at 414 (quoting *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 617 (5th Cir. 2000)).

## III.

On appeal, Northfield contends that the language of the policy is clear: the policy does not apply to bodily injury to any employee of "any organization that contracted with [Herrera]." Thus, Northfield argues that it does not have a duty to defend Herrera in the state-court litigation.

Texas's "eight-corners rule" instructs that an insurer's duty to defend its insured must be determined "solely from terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). The only question before the court is whether Herrera's commercial general liability policy excludes coverage for upstream contractors' employees. Because the Texas Supreme Court has not addressed this question, we must make an "*Erie* guess." *Boyett*, 741 F.3d at 607.

"Under Texas law, insurance polic[i]es are construed according to the same rules of construction used to interpret contracts." *In re TransTexas Gas Corp.*, 597 F.3d 298, 309 (5th Cir. 2010) (citing *Don's Bldg. Supply, Inc. v.*

No. 17-51080

*OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008)). "The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). Terms are assigned "their ordinary and generally accepted meaning unless the contract directs otherwise." *Id.*

To resolve a dispute over an insurance policy's meaning, we "first look to the plain language of the [policy] to determine whether it is ambiguous." *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012). "An insurance policy is only ambiguous if its plain language is amenable to more than one reasonable interpretation." *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009). "An ambiguity does not exist, however, 'simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law.'" *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010)). We may only consider the parties' interpretation and external evidence once the contract is first determined to be ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

Paragraph (3)(a) of Herrera's policy excludes "[a]ny person who is employed by . . . any organization that: (a) [c]ontracted with [Herrera] for services . . . arising out of and in the course of employment by that organization or performing duties related to the conduct of that organization's business." The parties mainly dispute the meaning of the phrase "contracted with [Herrera] for services." The policy does not indicate that the parties intended technical or industry-specific meanings for this phrase. Thus, we give the phrase its "plain, ordinary, and generally accepted meaning." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We may look to "[l]egal

No. 17-51080

or other well-accepted dictionaries" as well as "leading treatises on grammar and word usage." *Horn*, 703 F.3d at 738.

The phrase "contracted with" can be used to refer to upstream and downstream relationships. Black's Law Dictionary focuses on the use of "contract" as a noun, defining "contract for services" generally as "[a] contract for a job undertaken by an independent contractor, as opposed to an employee." *Contract for Services*, Black's Law Dictionary (10th ed. 2009). Oxford Dictionaries provides a helpful definition of the verb "contract," defining it as to "enter into a formal and legally binding agreement." *Contract*, Oxford Dictionaries English, https://en.oxforddictionaries.com/definition/contract. It then provides various examples, some of which use "contract with" to indicate that the subject of the sentence has been hired by another, and others using "contract with" to indicate that the subject is hiring a subcontractor.[1] *Id.* Likewise, we have used the phrase "contracted with" to indicate that the subject of the sentence had both upstream and downstream relationships. *Compare Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 770 (5th Cir. 2010) (using "Younan contracted with Bagby to provide full elevator maintenance services" to indicate that Younan hired Bagby), *with Sulzer Carbomedics, Inc. v. Or. Cardio-Devices, Inc.*, 257 F.3d 449, 459 (5th Cir. 2001) (describing case where "plaintiff contracted with one of the defendants to establish a rock quarry on that defendant's land," meaning that the object of the sentence (the defendant) hired the plaintiff). Thus, the plain language of the phrase "any organization that: (a) Contracted with [Herrera] for services"

---

[1] For instance, the entry provides examples such as, "Local governments can also contract with private businesses for other services, like trash collection," suggesting that the government has hired a private business by "contract[ing] with" the business, as well as, "Vendors contract with one of nine independent laboratory-testing facilities," which could be read as the vendor entering into a contract by which it agrees to provide services to the laboratory-testing facilities.

7

could reasonably be read to include both upstream and downstream contractors, and Northfield's proffered interpretation is reasonable.

Moreover, unlike paragraph (2), which limits its application to persons "performing duties related to [Herrera's] business," paragraph (3)(a) uses broader language, applying to employees of organizations when they are "performing duties related to the conduct of *that organization's* business" (emphasis added). It would not be necessary to modify the language in paragraph (3)(a) if the exclusion only ran downstream—any work performed by Herrera's subcontractor is necessarily related to his work. But work performed by employees of those who have hired Herrera may not be related to Herrera's own work. Otherwise put, if the parties had intended for paragraphs (2) and (3)(a) to apply to subcontractors, we assume that they would have used the same language. Thus, we understand the modification of paragraph (3)(a)'s language to demonstrate the parties' intent that it apply more broadly, further supporting our conclusion that paragraph (3)(a) can reasonably be read to apply to upstream contractors.

The only reasonable interpretation of the policy is that it applies upstream and downstream. We find no reason to limit its application to downstream contractors. The plain language is unambiguous. *Cf. Nautilus Ins. Co.*, 566 F.3d at 455 (defining ambiguity as arising when there is more than one reasonable interpretation of a policy). Because the plain language is unambiguous, it must be enforced as written, and judgment should be entered in favor of Northfield on Herrera's duty-to-defend claim.

Texas law usually reserves determination of the duty to indemnify until the conclusion of the underlying litigation, but it does recognize an exception: when "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 669

(5th Cir. 2015) (quoting *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curiam)). Thus, having decided that there is no duty to defend, we can decide the duty to indemnify at this point "when it is clear that [our] ruling on the duty to defend must also control the duty to indemnify." *Id.* at 672. Given the undisputed facts surrounding the underlying claim and the unambiguous language of the exclusion, we conclude that this is such a case. Accordingly, judgment should be rendered in favor of Northfield on Herrera's indemnity claim.

Although Herrera offers an alternative, his suggested interpretation is not a reasonable reading of the policy. Herrera urges us to affirm the district court, which assumed that the exclusion followed a "logical progression." Reading the first paragraph as applying to Herrera's employees and the second as applying to his subcontractors, the district court reasoned that the "logical progression" of the exclusion suggested that the third paragraph should apply to Herrera's subcontractors (paragraph (3)(a)) and their subcontractors (paragraph (3)(b)).

Herrera does not cite any caselaw from Texas, the Fifth Circuit, or otherwise instructing that courts should assume that the drafters of an insurance policy intended their provisions to follow a "logical progression" when the text of the policy is otherwise unambiguous. And the Texas Supreme Court has discouraged litigants from searching for ambiguities. *See Nat'l Union Fire Ins.*, 907 S.W.2d at 522 (finding error in decision to allow discovery regarding insurance contract when no ambiguity was apparent on the face of the policy, even though discovery may have led to information regarding latent ambiguity). To infer intent into the sequencing of the exclusion would require us to ignore its plain language. Therefore, we find Herrera's interpretation is not reasonable.

No. 17-51080

Herrera cites several cases construing similar language to bar suits by employees of subcontractors. But these courts did not consider whether that language would apply to upstream contractors, and are therefore not helpful. And although one court has interpreted similar language as prohibiting the upstream application of this exclusion, *Capitol Specialty Ins. Corp. v. Yuan Zhang*, No. C11-41Z, 2012 WL 1252638, at *3 (W.D. Wash. Apr. 13, 2012),[2] the *Zhang* court's analysis was brief, and there is no indication that the policy at issue included language broadening its scope, like that included in Herrera's policy.

Herrera also argues that Northfield has taken the opposite position—i.e., that paragraph (3)(a) only applies downstream—in *Doval*. This characterization is misleading, as the *Doval* court only considered the application of paragraph (3)(b). *See* 2015 WL 1243520, at *2. Although Northfield argued that (3)(a) and (3)(b) will run downstream to subcontractors and sub-subcontractors, it did not take a position on whether the provisions *only* run downstream. *Id.*

Finally, Herrera protests that excluding this claim will render the policy's coverage "illusory" because the elevator in question is a service elevator and, therefore, only used by Austin Energy employees. Texas disfavors constructions of insurance contracts that render *all* coverage illusory. *See Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 F. App'x 267, 274 (5th Cir. 2008) (per curiam) (unpublished) (citing *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005)). But when an insurance policy will provide coverage for other claims, Texas courts are unlikely to deem the

---

[2] The insurance policy at issue in *Zhang* excluded property damage "sustained by any person" who is "1. Contracted with you or with any insured for services; or (2) . . . contracted with any entity that is: A. Contracted with you or with any insured for services; or B. Contracted with others on your behalf for services." *Zhang*, 2012 WL 1252638, at *3 (omission in original).

10

No. 17-51080

policy illusory. *E.g.*, *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997). Herrera will still be protected against claims brought by third parties, such as SEC's vendors and visitors to the site. He will also be protected from claims relating to his other job sites. Therefore, the policy's coverage is not illusory.

**IV.**

For the foregoing reasons, we REVERSE and REMAND for entry of judgment in favor of Northfield.