## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20751

United States Court of Appeals
Fifth Circuit

**FILED**
August 22, 2017

Lyle W. Cayce
Clerk

EXXONMOBIL CORPORATION,

Plaintiff - Appellee Cross-Appellant

v.

ELECTRICAL RELIABILITY SERVICES, INCORPORATED; OLD
REPUBLIC INSURANCE COMPANY,

Defendants - Appellants Cross-Appellees

Appeals from the United States District Court
for the Southern District of Texas

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

This diversity case under Texas law involves a dispute between ExxonMobil (Exxon), on one hand, and Exxon's contractor, Electrical Reliability Services (ERS), and ERS's insurer, Old Republic Insurance Company (ORIC), on the other. The dispute arises out of a personal injury lawsuit filed by an employee of a subcontractor of ERS against Exxon and ERS. Exxon settled that lawsuit for $2.5 million and sought reimbursement from ERS and ORIC, contending that ERS's contractual obligation to insure Exxon as an additional insured and the insurance policy issued by ORIC required ERS and ORIC to pay for the settlement of the suit and the cost of litigation.

No. 15-20751

In a 2012 judgment, the district court concluded that ORIC breached its obligation to provide coverage and that ERS breached its obligation to pay the policy's $3 million deductible. The court therefore awarded Exxon over $3 million in damages, attorney's fees, costs, and interest. ERS appealed, but a prior panel of this court vacated the district court's judgment and remanded for reconsideration in light of the intervening decision by the Supreme Court of Texas in *In re Deepwater Horizon*, 470 S.W.3d 452 (Tex. 2015). On remand, the district court determined that the intervening case did not affect its decision and essentially reinstated its 2012 judgment.

ERS again appealed, challenging the district court's conclusion as to its obligation to pay the deductible. Alternatively, ERS contends that the district court erred in its award of pre-judgment interest through the date of the judgment on remand rather than only through the date of the 2012 judgment. ORIC also appeals, claiming that the district court erred by holding it jointly and severally liable with ERS for the full amount of the judgment. Exxon cross-appeals, challenging the district court's denial of certain attorney's fees.

## I. BACKGROUND

In 2008, Exxon contracted with ERS for the performance of electrical work and services at Exxon's chemical facility and refinery in Beaumont, Texas. The contract between the parties contained indemnity and insurance provisions. The indemnity provision, contained in § 12 of the contract, required that each party indemnify the other from third party claims resulting from the first party's negligence. It provided, in relevant part:

> **12. Third Party Indemnity.** Purchaser [Exxon] and Supplier [ERS] shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of action asserted against the indemnitee by any third party . . . for personal injury, death, or loss of or damage to property resulting from the indemnitor's negligence.

2

No. 15-20751

The insurance provisions, contained in § 14, required ERS to purchase commercial general liability and other types of insurance and to name Exxon as an additional insured on the policies. Section 14, in pertinent part, provided:

> **14. Insurance.**
> (a) **Coverages.** Supplier [ERS] shall carry and maintain in force at least the following insurances and amounts: . . . (2) its normal and customary commercial general liability insurance coverage and policy limits or at least $1,000,000, whichever is greater, providing coverage for injury, death or property damage resulting from each occurrence . . . . Notwithstanding any provision of an Order to the contrary, Supplier's liability insurance policy(ies) described above shall: (i) cover Purchaser [Exxon] and Affiliates as additional insureds in connection with the performance of Services; and (ii) be primary as to all other policies (including any deductibles or self-insured retentions) and self insurance which may provide coverage.
>
> (b) Other Insurance Requirements. The above obligations of Supplier [ERS] and/or its Insurers shall apply to Supplier's [ERS's] self-insured retentions and/or deductibles. The minimum insurance requirements as set forth above shall not limit or waive a party's legal or contractual responsibilities to the other party or others. Supplier's insurance shall apply to Supplier's indemnity and defense obligations under the Order except, with respect to Services subject to the law of the State of Texas, each party agrees to maintain the insurance and limits as specified in this Section or self insurance during the duration of this Agreement in support of the mutual indemnifications, if any, agreed to in Sections 11, 12, and 13 above.

ERS purchased an insurance policy from ORIC that provided for a $3 million deductible. An endorsement to the policy also provided for additional-insured coverage where ERS had "agreed by any contract" to so provide, but, it qualified, "Any additional insureds are additional insureds only in respect to their interest in the operations of the Named Insured and only for

3

such terms and limits which are the lesser of the policies hereon or the written requirements between the Named Insured and the Certificate Holder."

ERS subcontracted part of the work and services at the Exxon facility to MMR, Inc.  John Burnham, an MMR employee, was severely injured while working at the facility.  Burnham brought negligence claims against Exxon in state court and later added ERS as a defendant.  Exxon sent ERS a demand for coverage as an additional insured, but ERS subsequently denied coverage.  Exxon ultimately settled Burnham's claims against it for $2.5 million, while disclaiming liability.  Burnham later voluntarily dismissed his claims against ERS.  Exxon then sought insurance coverage for its settlement payment and related defense fees, costs, and interest, but ERS and ORIC denied coverage.  Exxon brought suit for declaratory judgment in Texas state court against ERS and ORIC, contending that ERS was required to insure Exxon under the 2008 contract and that ORIC, as ERS's insurer, was obligated to provide coverage to Exxon for the settlement of the Burnham suit and attorney's fees incurred in connection with that suit.

ERS removed that action to the United States District Court for the Southern District of Texas based on diversity jurisdiction.  Exxon and ERS filed cross-motions for summary judgment on the issue of whether ERS was contractually obligated to name Exxon as an additional insured.  ERS argued that the relevant contract was a prior 2007 agreement between the parties, which did not require ERS to insure Exxon as an additional insured.  Alternatively, ERS contended that under the 2008 contract ERS was obligated to cover Exxon as an additional insured only to the extent of the parties' mutual indemnification obligations.  ERS argued that it was therefore not obligated to provide coverage for harms resulting from Exxon's sole negligence, which, according to ERS, included Burnham's injuries. Ruling on the parties' cross-motions, the district court determined that the operative contract was the 2008

contract, that the contract required ERS to provide additional-insured coverage for Exxon, and that this insurance obligation was not limited by the indemnity provision of that contract. However, the district court also ruled that ERS had complied with its obligation through the additional-insured endorsement to its policy with ORIC.

Despite the district court's partial summary judgment ruling on the issue of coverage, ERS and ORIC continued to refuse to reimburse Exxon in connection with the Burnham settlement. ERS and Exxon disagreed as to which party was responsible for payment of the policy's $3 million deductible. Among other arguments ERS raised in this respect, it reasserted its previously-rejected position that the indemnity provision in the 2008 contract served to limit its obligations under the insurance provision. Following this argument, ERS maintained that the indemnity provision mandated that Exxon pay the deductible because, according to ERS, Burnham's injuries resulted from Exxon's sole negligence. ORIC, for its part, claimed that it was not responsible for any payment because, according to ORIC, the relevant amounts owed were less than the amount of the $3 million deductible and therefore did not trigger ORIC's responsibility to make payments on Exxon's claim. Following a bench trial, the district court held: (1) ERS breached the contract by failing to pay the deductible, and (2) ORIC breached the insurance policy by failing to provide Exxon with a defense in the Burnham lawsuit and failing to cover any amounts above the deductible. The district court made no finding as to the parties' respective negligence, if any, in connection with Burnham's injuries.

In a 2012 amended final judgment, the district court held ERS and ORIC jointly and severally liable to Exxon for $3,212,002.70 for the settlement of Burnham's lawsuit, defense fees and costs in that suit, and interest and attorney's fees in the present suit, and it provided for an additional $40,000 to

be awarded for appellate attorney's fees if ERS or ORIC brought an unsuccessful appeal. ERS and ORIC appealed. Prior to any decision in that appeal, the Supreme Court of Texas decided this court's certified question in *In re Deepwater Horizon*, 470 S.W.3d 452 (Tex. 2015).[1] A prior panel of this court then vacated the district court's judgment and remanded it "for further consideration in the light of the answer given by the Texas Supreme Court [in *Deepwater Horizon*]," *Exxonmobil Corp. v. Elec. Reliability Servs.*, 616 F. App'x 137, 138 (5th Cir. 2015), with each party to bear its own costs on appeal.

On remand, the district court concluded that *Deepwater Horizon* had no impact on its prior decision and therefore reinstated its 2012 judgment. In January 2016, upon motion by Exxon for additional attorney's fees and pre-judgment interest, the district court entered a second amended final judgment, adding pre-judgment interest up to the date of that judgment and holding ERS and ORIC jointly and severally liable for a total of $3,670,359.57. However, the court rejected Exxon's request for attorney's fees incurred in defending the initial appeal and additional attorney's fees that were incurred prior to that appeal.

The parties now appeal and cross-appeal. ERS challenges the district court's determination, following the bench trial, that ERS was obligated to pay the deductible in connection with Exxon's losses related to the Burnham litigation. Alternatively, ERS claims that the court erred in awarding pre-

---

[1] The *Deepwater Horizon* opinion was issued in response to the following certified question from this court:

> Whether *Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660 (Tex. 2008), compels a finding that BP is covered for the damages at issue, because the language of the umbrella policies alone determines the extent of BP's coverage as an additional insured if, and so long as, the additional insured and indemnity provisions of the Drilling Contract are "separate and independent"?

*Deepwater Horizon*, 470 S.W.3d at 455.

judgment interest through the date of the judgment on remand and that, instead, the court should have awarded pre-judgment interest up to the date of the 2012 judgment and post-judgment interest from that point on.  ORIC challenges the court's decision to hold it jointly and severally liable with ERS for the entire amount of the award rather than only for those amounts in excess of, or not subject to, ORIC's policy's deductible.  Notably, neither ERS nor ORIC challenges the district court's partial summary judgment ruling on the issue of coverage.  Exxon's cross-appeal challenges the district court's denial of its request for additional attorney's fees.

## II. APPLICABLE LAW

In reviewing a bench trial, we review findings of fact for clear error and legal determinations de novo.  *Seal v. Knorpp*, 957 F.2d 1230, 1234 (5th Cir. 1992).  "When, as in this case, subject matter jurisdiction is based on diversity, federal courts apply the substantive law of the forum state—here, [Texas]." *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014).  "To determine the forum state's law, we look first to the final decisions of that state's highest court—here, the [Texas] Supreme Court."  *Id.*  "In the absence of a determinative decision by that court on the issue of law before us, we must determine, in our best judgment, how we believe that court would resolve the issue."  *Id.*  In making such a determination, we "may look to the decisions of intermediate appellate state courts for guidance."  *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000).

## III. ERS'S APPEAL

A. Duty to Pay the Deductible

ERS contends that its duty to pay the deductible for Exxon's claims as an additional insured under § 14 of the 2008 contract was limited by § 12's provision that Exxon must indemnify ERS for claims arising from Exxon's

negligence.[2] ERS maintains that Exxon's sole negligence caused Burnham's injuries and thus that, contrary to the district court's conclusion, it was under no obligation to pay the deductible in connection with Exxon's losses related to the Burnham litigation.  Exxon responds that the district court correctly interpreted the insurance requirements of § 14 as separate and independent from the indemnity requirements of § 12, and it also emphasizes that the district court did not make any findings of fact as to the negligence of any party.

The proper interpretation of a contract is a legal determination that is reviewed de novo. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 428 (5th Cir. 2007).   Under Texas law, in construing a contract, a court "must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).  If the plain language of a written contract is such that it can be given a definite legal meaning, then it is not ambiguous as a matter of law and the court must enforce it as written.  *Univ. C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951).  "[C]ourts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *Tenneco Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 646 (Tex. 1996).  In construing the plain language of the contract, no single provision taken alone is to be given controlling effect; rather, each provision must be considered with reference to the whole instrument. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).  Courts must

---

[2] ERS expressly disclaims any challenge to the district court's partial summary judgment ruling that the endorsement to its policy with ORIC provided coverage for Exxon as an additional insured.  Nevertheless, ERS makes an assertion in its brief that ORIC's policy incorporated § 12 of the 2008 contract as a limitation on its coverage of Exxon as an additional insured.  However, as ERS appropriately concedes, the extent of its obligation to provide insurance coverage for Exxon and to pay the deductible depends on the terms of the 2008 contract rather than on the terms of ORIC's policy.  Accordingly, we need not examine the terms of the policy itself.

favor an interpretation that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

> As previously noted, § 14(a) of the contract provides, in relevant part:

> Supplier [ERS] shall carry and maintain in force at least the following insurances and amounts: . . . (2) its normal and customary commercial general liability insurance coverage and policy limits or at least $1,000,000, whichever is greater, providing coverage for injury, death or property damage resulting from each occurrence . . . .  Notwithstanding any provision of an Order to the contrary, Supplier's liability insurance policy(ies) described above shall: (i) cover Purchaser [Exxon] and Affiliates as additional insureds in connection with the performance of Services; and (ii) be primary as to all other policies (including any deductibles or self-insured retentions) and self insurance which may provide coverage.

Section 14(b) states, in pertinent part, "The above obligations of Supplier and/or its Insurers shall apply to Supplier's self-insured retentions and/or deductibles."

ERS concedes that the plain language of these provisions, read in isolation, suggests that ERS was obligated to maintain insurance covering Exxon's losses in connection with the Burnham litigation and to pay the deductible.  However, ERS contends that the indemnity provision in § 12, read in conjunction with § 14, compels a different interpretation.  Section 12 provides: "Purchaser [Exxon] and Supplier [ERS] shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of action asserted against the indemnitee by any third party . . . for personal injury . . . resulting from the indemnitor's negligence."  ERS asserts that § 12 allocated liability between ERS and Exxon and provided that Exxon alone would be liable for claims resulting from Exxon's own negligence, which, according to ERS, includes the Burnham litigation.  ERS argues that requiring it to pay the

deductible for Exxon's claim in connection with the Burnham litigation would be inconsistent with § 12's allocation of liabilities between the parties and would render § 12 meaningless.

The Supreme Court of Texas has long held that indemnity and insurance provisions in a single contract may impose separate and independent obligations. In the case of *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794 (Tex. 1992), Getty Oil entered into a contract to purchase chemicals from NL Industries. *Id.* at 796. The contract included both an indemnity provision and an insurance provision. *Id.* at 797. The insurance provision stated, "All insurance coverage carried by [NL], whether or not required by [the other provisions of the contract], shall extend to and protect" Getty. *Id.* (second alteration in original). An independent contractor working for Getty was subsequently killed in an accident involving NL's product, and a jury found that Getty was solely responsible for the accident. *Id.* Thereafter, NL's insurer denied coverage for Getty, asserting, inter alia, that the Texas Oilfield Anti-Indemnity Statute prohibited indemnification for one's own negligence and therefore invalidated the insurance provision. *Id.* at 797–98, 802–04. Based on the breadth of the insurance provision's language, which required NL to extend insurance coverage to Getty "whether or not required [by the other provisions of the contract]," the Supreme Court of Texas determined that the insurance requirement was "a separate obligation," independent from the indemnity provision. *See id.* at 804 (alteration in original). In light of that conclusion, the *Getty* court held that the prohibition of the Anti-Indemnity Statute did not apply. *See id.*

In *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008), the Supreme Court of Texas reaffirmed the principle that insurance and indemnity provisions can give rise to separate and independent obligations. In that case, Triple S Industrial Corp. contracted to perform work

at an ATOFINA refinery under a service contract that contained separate indemnity and insurance provisions. *Id.* at 662. Triple S agreed to indemnify ATOFINA for harms that were not due to ATOFINA's negligence, misconduct, or strict liability. *Id.* Triple S also agreed to carry commercial general liability insurance and excess insurance and to provide certificates of insurance naming ATOFINA as an additional insured. *Id.* at 663. A Triple S employee subsequently drowned at the refinery, and his survivors sued Triple S and ATOFINA. *Id.* ATOFINA made coverage demands pursuant to its additional-insured status, but the excess insurer denied ATOFINA coverage, arguing that, in light of the indemnity provision, ATOFINA was not covered for losses resulting from ATOFINA's own negligence. *Id.* In rejecting the insurer's argument, the Supreme Court of Texas considered the language of the relevant insurance provision in the underlying service contract, which required "that ATOFINA 'shall be named as additional insured in each of [Triple S's] policies.'" *Id.* at 670 (alternation in original). Relying upon its prior decision in *Getty Oil*, the court held that this language created a "separate and independent" obligation to insure, which was not affected by "ATOFINA's agreement to forego *contractual* indemnity for its own negligence." *See ATOFINA*, 256 S.W.3d at 670.

In *Deepwater Horizon*, the Supreme Court of Texas confronted an additional-insured provision containing limiting language that was not present in either *Getty* or *ATOFINA*. *Deepwater Horizon* involved an offshore drilling contract between BP, an oil-field developer, and Transocean, a drilling-rig owner, that contained both indemnity and additional-insured provisions. 470 S.W.3d at 456–57. "Among other indemnity provisions, Transocean agreed to indemnify BP for above-surface pollution regardless of fault, and BP agreed to indemnify Transocean for all pollution risk Transocean did not assume, *i.e.*, subsurface pollution," also regardless of fault. *Id.* at 456 (footnote omitted).

The additional-insured provision stated that BP and its affiliates "shall be named as additional insureds in each of Transocean's policies . . . *for liabilities assumed by Transocean under the terms of this contract*." *Id.* at 465 (alterations omitted and added). Following the Deepwater Horizon explosion and oil spill, BP demanded coverage from Transocean's insurers, and the insurers sought a declaration that BP would not be entitled to additional-insured coverage for subsurface-pollution claims. *Id.* at 458. The Supreme Court of Texas concluded that BP was not entitled to coverage for such claims, as it read the additional-insured provision to impose "a limitation on the general insurance obligation that is coterminous with all of Transocean's contractual indemnity obligations." *Id.* at 465–66. Thus, the court held that BP was not covered by Transocean's policies because BP, not Transocean, assumed liability for subsurface-pollution claims. *Id.* at 456.

In so holding, the *Deepwater Horizon* court clarified the principle announced in *Getty* and applied in *ATOFINA*. Responding to BP's argument that the drilling contract's indemnity and additional-insured provisions were "separate and independent" and that the indemnity provision therefore did not limit BP's additional-insured status, the Supreme Court of Texas explained that "BP's argument conflates duty with scope":

> [S]imply because the duties to indemnify and maintain insurance may be separate and independent does not prevent them from also being congruent; that is, a contract may reasonably be construed as extending the insured's additional-insured status only to the extent of the risk the insured agreed to assume.

*Id.* at 468. "Such is the case here" the court further explained. *Id.* "The Drilling Contract required Transocean to name BP as an additional insured only for the liability Transocean assumed under the contract. Accordingly, Transocean had separate duties to indemnify and insure BP for certain risk, but the scope of that risk for either indemnity or insurance purposes extends only to above-

surface pollution." *Id.* Thus, according to the court in *Deepwater Horizon,* the relevant inquiry is not simply whether the parties intended the indemnity and additional-insured provisions to be independently and separately enforceable, but also whether they intended the scope of the indemnity obligation to govern the scope of the duty to provide additional-insured coverage. *See id.* We now turn to apply the principles established in *Getty*, *ATOFINA*, and *Deepwater Horizon* to our case.

As previously discussed, in construing the contractual indemnity and additional-insured provisions at issue in the instant case, we must look to the intention of the parties "as expressed in the writing itself." *Italian Cowboy Partners*, 341 S.W.3d at 333. Examining these contractual provisions, we conclude that they are more similar to those in *ATOFINA* than to those in *Deepwater Horizon* in that there is no language in either provision suggesting that the parties intended the scope of the indemnity provision to govern the scope of the insurance provision. Similar to the insurance provision in *ATOFINA*, the insurance provision of the 2008 contract provided that ERS's "liability insurance policy(ies) . . . shall: (i) cover [Exxon] and Affiliates as additional insureds." Using similarly broad language, the insurance provision also provides that ERS's obligation to afford coverage to Exxon "shall apply to Supplier's [ERS's] self-insured retentions and/or deductibles." Thus, the 2008 contract provided that ERS "shall" cover Exxon as an additional insured and "shall" pay the applicable deductibles, without qualification. As in *ATOFINA*, these requirements under the insurance provision are not tied to the scope of liability under the indemnity provision.

Contrary to ERS's contentions, the additional-insured provision in the instant case does not contain any limitation on ERS's general insurance obligation that is similar to the limitation in the additional-insured provision in *Deepwater Horizon,* under which BP was to be named as an additional

insured only *"for liabilities assumed by Transocean under the terms of this contract."* 470 S.W.3d at 456–57. ERS points to two portions of § 14(b) that, it contends, serve the same role as the limiting language in *Deepwater Horizon*. First, it points to § 14(b)'s statement that "[t]he minimum insurance requirements as set forth above shall not limit or waive a party's legal or contractual responsibilities to the other party or others." This passage does not serve to limit ERS's general insurance obligations. The declaration that insurance requirements shall not limit or waive contractual responsibilities is most naturally read as a reservation of rights. For instance, it would likely allow ERS to seek indemnification from Exxon, or vice versa, notwithstanding ERS's duty to insure Exxon. But this declaration does not impose a limitation upon ERS's duty to insure.

Second, ERS emphasizes the following language in § 14(b):

> Supplier's [ERS's] insurance shall apply to Supplier's [ERS's] indemnity and defense obligations . . . except, with respect to Services subject to the law of the State of Texas, each party agrees to maintain the insurance and limits as specified in this Section or self insurance during the duration of this Agreement in support of the mutual indemnifications, if any, agreed to in Sections 11, 12, and 13 above.

ERS argues that Exxon's duty to maintain its own insurance in support of Exxon's indemnity obligations establishes that ERS was not required to insure Exxon for losses caused by Exxon's sole negligence. But a requirement that one party maintain insurance in support of its obligations related to a particular contingency does not preclude a requirement that the other party also maintain insurance to cover the same contingency. Indeed, as Exxon points out, § 14(a) of the contract required ERS's policies naming Exxon as additional insured to "be primary as to all other policies," meaning that the contract contemplated that certain harms may be covered by multiple policies, including policies held by Exxon. ERS also argues, "By § 14(b) first providing

that ERS's insurance applies to ERS's indemnity obligations, and then stating 'except,' the language that follows 'except' necessarily nullifies ERS's obligation to provide insurance to Exxon under the circumstances that follow 'except.'" That is a faulty argument. The language that precedes the word "except" establishes ERS's unilateral duty to maintain insurance coverage for its own indemnity obligations; it does not address ERS's obligation to maintain coverage for Exxon as an additional insured. Thus, whatever the effect of the language following the word "except" on ERS's duty to maintain insurance in support of its own obligation, it cannot affect ERS's duty to provide additional-insured coverage to Exxon.

Contrary to ERS's assertion, our interpretation of the scope of the insurance provision in § 14 of the contract does not render the indemnity provision in § 12 meaningless, as the latter would allow ERS to bring an indemnity claim against Exxon, under appropriate circumstances. But, in the present case, ERS has not brought a claim under the indemnity provision; further, ERS introduced no evidence that any act or omission by Exxon caused Burnham's injuries, and the district court expressly stated that it had made no findings of fact as to any party's negligence.

For the foregoing reasons, we conclude that, under the parties' contract, ERS's obligation to insure Exxon and to pay any applicable deductibles was not limited by the indemnity provision of the contract. Accordingly, we affirm the district court's judgment as to ERS's duty to pay the deductible.

B. Post-Judgment Interest

The district court awarded pre-judgment interest up to the date of entry of the second amended final judgment, in 2016, and post-judgment interest from that date forward. ERS claims that this was error and that, instead, the post-judgment interest rate, which is significantly lower than the applicable pre-judgment interest rate, should apply from the date of the 2012 judgment

because that judgment was not materially changed on remand. "In diversity cases, federal law controls the award of postjudgment interest, including decisions about when postjudgment interest begins to accrue." *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015) (citing *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 622–24 (5th Cir. 1988)). We review the district court's application of federal post-judgment interest de novo. *See id.* at 614–15. Under 28 U.S.C. § 1961(a), post-judgment interest "shall be calculated from the date of the entry of the judgment." However, § 1961 does not instruct how to apply post-judgment interest when there are multiple judgments.[3]

In determining whether post-judgment interest should run from a pre- or post-remand judgment, courts have considered whether the district court reopened the record and whether the judgment was materially changed on remand. *See, e.g.*, *Art Midwest,* 805 F.3d at 617 (post-judgment interest applied from date of first judgment where this court "left much of the original judgment intact" and where, on remand, the district court recalculated damages without reopening the evidentiary record); *Reaves v. Ole Man River Towing, Inc.*, 761 F.2d 1111, 1113 (5th Cir. 1985) (post-judgment interest applied from date of original judgment where this court remanded for recalculation of damages in light of intervening law and the judgment was not changed on remand); *Loughman v. Consol-Penn. Coal Co.*, 6 F.3d 88, 97–98 (3d

---

[3] Exxon argues that the district court had no authority to apply post-judgment interest from the date of the 2012 judgment, pointing to the rule that "where the court of appeals expressly or implicitly directs the entry of a money judgment on remand without mentioning interest, post-judgment interest accrues only from the date of the judgment on remand." *Art Midwest*, 805 F.3d at 616. Exxon notes that our court's mandate in the prior appeal, remanding the case to the district court, said nothing about interest. That rule has no application in this case, however, as the previous panel remanded the case for reconsideration in light of *Deepwater Horizon* and neither expressly nor implicitly directed the entry of a money judgment on remand.

Cir. 1993) (whether post-judgment interest should run from the original judgment turns on "the degree to which the original judgment was upheld or invalidated on appeal"); *Cordero v. De Jesus-Mendez*, 922 F.2d 11, 16 (1st Cir. 1990) ("In general, where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest accrues from the date of the first judgment.").   Where the original judgment is "substantially affirmed by this court on appeal," we have held that "[federal post-judgment] interest properly accrues from the date of the initial judgment 'because that is the date on which the correct judgment should have been entered.'"   *Brooks v. United States*, 757 F.2d 734, 740, 741 (5th Cir. 1985) (quoting *Perkins v. Standard Oil Co. of Cal.,* 487 F.2d 672, 676 (9th Cir. 1973)).

Here, the previous panel vacated the 2012 judgment and remanded for reconsideration in light of intervening law—it did not find the judgment lacking in evidentiary or legal support.  On remand, the district court, without reopening the record, concluded that *Deepwater Horizon* required no change in the judgment.  Although the previous panel did not "substantially affirm" the district court's original judgment, we have now affirmed the essentially identical judgment on remand.  We thus conclude that the date of the 2012 judgment "is the date on which the correct judgment should have been entered."  *Brooks*, 757 F.2d at 741 (internal quotation mark omitted) (quoting *Perkins v. Standard Oil Co. of Cal.,* 487 F.2d 672, 676 (9th Cir. 1973)). Therefore, we hold that post-judgment interest applies from the date of the 2012 judgment.  *See Art Midwest*, 805 F.3d at 617; *Brooks*, 757 F.2d at 741; *Reaves*, 761 F.2d at 1113; *Cordero*, 922 F.2d at 16.

Exxon argues that we have applied post-judgment interest from the date of the original judgment only in cases in which remand was for recalculation

of damages or other, minor changes, whereas the instant case required the district court to conduct a substantive analysis of its prior findings in light of intervening law. We view this proffered distinction as immaterial. Under the precedents previously discussed, the primary consideration is the degree to which the original judgment is ultimately upheld or invalidated, not the characterization of the district court's labors on remand. *See Art Midwest*, 805 F.3d at 617; *Brooks*, 757 F.2d at 741; *Reaves*, 761 F.2d at 1113; *Cordero*, 922 F.2d at 16. Here, while the 2012 judgment was technically vacated, it was sound, and its adjudication of the merits remains essentially unchanged. Accordingly, we reverse the portion of the district court's judgment pertaining to the award of interest and remand for the court to award pre-judgment interest up to the date of the 2012 judgment and post-judgment interest from that point on.

## IV. ORIC'S APPEAL

The district court's judgment holds ORIC and ERS jointly and severally liable for the entire award to Exxon. ORIC claims that this was error, as the terms of ERS's insurance policy provided for a $3 million deductible; it argues that it should be held liable only for amounts above, or not subject to, the deductible. Exxon does not attempt to defend the district court's decision to hold ORIC jointly and severally liable for the entire amount of the judgment. Rather, both ORIC and Exxon agree that ORIC should be held liable only for attorney's fees, costs, and expenses related to litigation in this coverage suit and the Burnham lawsuit, as those are not subject to the deductible, as well as for any other amount that is covered by ORIC's policy and exceeds the deductible.

Joint and several liability for a contractual claim depends on the relationship between the parties and the existence of a joint obligation. *CITI Priesmeyer, Inc. v. K&O Ltd. P'ship,* 164 S.W.3d 675, 684 (Tex. App. 2005).

No. 15-20751

ORIC is correct that it should not be held jointly and severally liable with ERS for the entire award to Exxon because it was under no obligation to pay amounts that were subject to and did not exceed the deductible. Accordingly, we vacate the district court's judgment on this issue and remand for the district court to modify the judgment to hold ORIC jointly and severally liable with ERS only for any amounts either above or not subject to the policy's $3 million deductible.

## V. EXXON'S CROSS-APPEAL

Exxon appeals the district court's failure to award certain attorney's fees in its second amended final judgment. During the bench trial, the parties stipulated to the amounts of fees and costs incurred by Exxon and to their reasonableness. Following trial, the district court found that Exxon was entitled to those fees and costs and also, upon Exxon's request, made a conditional award of $40,000 in attorney's fees if ERS and/or ORIC brought an unsuccessful appeal. On remand, Exxon filed an updated request for attorney's fees. The district court again awarded Exxon attorney's fees, but it denied attorney's fees incurred during the initial appeal as well as additional attorney's fees that Exxon incurred in proceedings before the district court prior to that appeal but that it did not previously seek. Exxon challenges the denial of those fees.

The award of attorney's fees in this diversity case is governed by Texas state law and reviewed for abuse of discretion. *See DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 433 (5th Cir. 2003). Under Texas law, the trial court has discretion to determine the amount of the award, but an award of reasonable fees is mandatory if a party prevails in a breach of contract case, such as the instant case, and there is proof of reasonable fees. *See id.* at 433 & n.7 (citing TEX. CIV. PRAC. & REM. CODE § 38.001). For the following reasons, we conclude

that the district court erred in denying Exxon attorney's fees for the initial appeal but properly denied Exxon's previously-unrequested fees.

A. Attorney's Fees for the Initial Appeal

Under Texas law, attorney's fees for breach of contract include fees incurred in defending against an unsuccessful appeal. *Id.* at 436 (citing *Gunter v. Bailey,* 808 S.W.2d 163, 166 (Tex. App. 1991)). In denying Exxon attorney's fees for the initial appeal, the district court stated, "In light of the Fifth Circuit's Order that each party bear its own costs on appeal, [the judgment amount] does not include fees and costs on appeal." Because the district court directly tied the previous panel's order as to costs to the denial of attorney's fees, it appears that the district court believed that it was bound by that order to deny Exxon attorney's fees incurred on appeal. However, our court's allocation of costs on appeal pertains to costs under Federal Rule of Appellate Procedure 39, which includes only "the expenses of docketing an appeal [and] preparing and filing briefs and records," not attorney's fees. *Chem. Mfrs. Ass'n v. U.S.E.P.A.*, 885 F.2d 1276, 1278 (5th Cir. 1989). Thus, our allocation of costs on appeal does not affect a district court's ability to award attorney's fees incurred on appeal.

The question remains whether ERS's appeal was unsuccessful. Exxon argues that it "successfully defended ERS's appeal" because the district court's judgment on remand was substantially similar to the 2012 judgment. ERS rejects this characterization, arguing instead that Exxon failed to prevail on appeal given that this court vacated the 2012 judgment. Neither party cites Texas cases directly on point, and we are not aware of any. Both parties' positions have persuasive force: on one hand, Texas courts have expressed concern about potentially deterring meritorious appeals, *see Gilbert v. City of El Paso*, 327 S.W.3d 332, 337 (Tex. App. 2010) ("[A] trial court may not punish a party for taking a successful appeal."), and an appellate court's vacatur of a

trial court's judgment typically suggests that the appeal was meritorious, regardless of the outcome on remand.  For similar reasons, it is difficult to characterize an appeal as unsuccessful where it resulted in the vacatur of an unfavorable judgment.  On the other hand, an appeal that results in reinstatement of the original judgment on remand can be seen as a pyrrhic victory, leading to the same substantive result while prolonging the dispute and greatly increasing both parties' expenses.

In the particular circumstances of the instant case, we conclude that Exxon is entitled to attorney's fees for the initial appeal.  Beyond the fact that the ultimate result of these protracted proceedings is that ERS remains liable to Exxon and was unable to defeat the district court's judgment, we view it as highly relevant that the previous panel identified no error in the district court's judgment but vacated and remanded only for consideration of intervening precedent.  Under these circumstances, we believe that ERS's technical, temporary victory is not the kind of meaningful success that the Texas courts are concerned about discouraging.  Accordingly, we reverse the district court's denial of attorney's fees to Exxon for defending against ERS's initial appeal.[4]

---

[4] ERS maintains that, even if Exxon is entitled to attorney's fees for the initial appeal, it should receive only $40,000, the minimum amount Exxon originally requested from the district court and that the district court awarded Exxon in the 2012 judgment.  ERS claims that Exxon's request for only $40,000 acted as a judicial admission or constituted "invited error."  Neither of those claims is correct.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. . . . [I]t has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).  In requesting attorney's fees, Exxon stated, "[S]hould either Defendant pursue an unsuccessful appeal against ExxonMobil, ExxonMobil requests an award of at least $40,000.00 for appellate attorneys' fees and costs."  This statement was not a concession or stipulation of fact; instead, it was merely a request.

As to "invited error," under that doctrine, "a party cannot complain on appeal of errors which he himself induced the district court to commit." *Heck v. Triche*, 775 F.3d 265, 279 (5th Cir. 2014) (alteration dond internal quotation marks omitted) (quoting *United States v. Lopez-Escobar*, 920 F.2d 1241, 1246 (5th Cir. 1991)). But this doctrine is also inapplicable here, as Exxon is not challenging the district court's initial award of $40,000 as error.

No. 15-20751

B. Previously Unrequested Attorney's Fees

On remand from this court, Exxon requested roughly $32,000 in attorney's fees and costs related to post-trial and post-judgment briefing. The district court denied these requests, stating that it "declines to award additional late requested attorneys' fees arising from the underlying trial of this case." Exxon claims its request for these fees was not late.

Federal Rule of Civil Procedure 54(d)(2)(A) provides, "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Rule 54(d)(2)(B)(i) requires that such a motion "be filed no later than 14 days after the entry of judgment." Exxon argues that Rule 54(d)(2) does not apply to its claim for attorney's fees because, it contends, such fees are an element of damages under Texas law.

However, the Supreme Court of Texas has held that attorney's fees incurred in the prosecution or defense of a claim are not compensatory damages. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172–73 (Tex. 2013) ("While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been, damages."). Exxon attempts to distinguish *Nalle Plastics*, noting that the court there considered the definition of compensatory damages for purposes of Texas Civil Practice and Remedies Code Section 52.006, which relates to the calculation of supersedeas bond amounts on appeal. This distinction notwithstanding, the court was clear that attorney's fees incurred in the prosecution or defense of a claim are simply not damages, relying on the plain meaning of the term "compensatory damages" and on long-standing precedent as well as a statutory provision distinguishing attorney's fees from damages. *See id.* at 171–74. The court's analysis applies with equal force

22

No. 15-20751

here.[5]   Accordingly, we affirm the district court's denial of the previously unrequested fees.

## VI. CONCLUSION

For the forgoing reasons, we: 1) AFFIRM the district court's judgment as to ERS's duty to pay the deductible; 2) REVERSE the portion of the judgment pertaining to the interest award and REMAND for calculation of a new interest award consistent with this opinion; 3) VACATE the portion of the judgment that held ORIC jointly and severally liable with ERS for the entire judgment and REMAND for modification consistent with this opinion; 4) REVERSE the denial of Exxon's attorney's fees for the initial appeal and REMAND for determination of amounts; and 5) AFFIRM the denial of Exxon's previously unrequested attorney's fees.

---

[5] Exxon contends that, even if Rule 54 controls its request for attorney's fees, it timely moved to include the relevant fees, as the district court's 2012 judgment was vacated and Exxon requested the relevant fees before the second amended final judgment was entered. However, Exxon included this argument only in its reply brief, and the argument is therefore forfeited. *See, e.g.*, *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017) (issue not raised in party's opening brief is forfeited).