# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50616

United States Court of Appeals
Fifth Circuit

**FILED**
July 19, 2018

Lyle W. Cayce
Clerk

DITECH FINANCIAL, L.L.C.,

　　　Plaintiff - Appellee

v.

DEWAYNE NAUMANN; THERESA C. GLOIER,

　　　Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-101

Before KING, SOUTHWICK, and HO, Circuit Judges.

PER CURIAM:*

　　　After Ditech Financial, LLC, sued them for failing to make their home-mortgage payments, Dewayne Naumann and Theresa Gloier—husband and wife—failed to answer. Default judgment was entered, and the district court ordered foreclosure of Ditech's lien on the couple's house. In its judgment, the district court stated that an order of sale directing law enforcement to seize and sell the property should issue. The judgment also directed that a writ of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

possession should issue in favor of the purchaser at the sale, ordering law enforcement to eject from the property persons other than the purchaser.

On appeal, Naumann and Gloier seek vacatur of the default judgment. They claim that it exceeded the scope of relief requested in Ditech's complaint, contravening Federal Rule of Civil Procedure 54(c)'s command that default judgments "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Specifically, they target the judgment's provision for future issuance of a writ of possession in favor of the foreclosure-sale purchaser. We conclude, contra Naumann and Gloier, that the relief granted did not exceed Rule 54(c)'s strictures, and thus we AFFIRM.

## I.

In September 2009, Dewayne Naumann and Theresa Gloier bought a house in Austin. Soon after, they executed a home-equity note and granted a security interest in the property via a home-equity security instrument. After they stopped paying in January 2013, Ditech Financial, LLC, the current owner and holder of the note, brought a diversity suit in federal court against the couple.

In its complaint, Ditech asserted judicial foreclosure and equitable subrogation as causes of action. Of particular relevance to this appeal, the prayer section of Ditech's complaint requested a judgment of "judicial foreclosure." It alternatively asked for non-judicial foreclosure—that is, "foreclosure in accordance with the Security Instrument and Texas Property Code section 51.002"—as well as "foreclosure pursuant to the doctrine of equitable subrogation." Ditech added that it wanted interest, attorneys' fees, and costs. Ditech concluded its prayer section by asking for "such other and further relief to which it may be entitled."

Naumann and Gloier were separately served, and the time for the pair to file their answers or other responsive pleadings came and went. Default and

No. 17-50616

eventually default judgment were entered. The default judgment deemed the complaint's allegations admitted, the debt defaulted, the couple jointly and severally liable for the outstanding balance (plus interest and costs), and Ditech's lien foreclosed. Ditech's lien on the house could be enforced, according to the judgment, through a foreclosure sale by law enforcement. Next, the judgment directed that "an order of sale shall issue to any federal marshal, county sheriff, or count[]y constable, directing him or her to seize and sell" the house "as under execution and satisfaction of this judgment." Finally, the court ordered that "a writ of possession shall issue in favor of the purchaser" of the house at the foreclosure sale, or its successor and assigns, compelling law enforcement to remove any unauthorized persons from the house.

A little less than a month after default judgment was entered, Naumann and Gloier filed a notice of appeal.[1] On appeal, the pair attack the scope of relief granted by the default judgment. Specifically, they claim that the judgment's order that a writ of possession shall issue in favor of a future purchaser goes beyond Ditech's prayer for judicial foreclosure, violating Federal Rule of Civil Procedure 54(c).[2]

---

[1] After Naumann and Gloier filed a notice of appeal, they moved before the district court to set aside the entry of default based on excusable neglect. This motion was denied. On appeal, they do not argue that excusable neglect warrants vacatur.

[2] They also argue that Ditech's complaint only requested non-judicial foreclosure—a contractual remedy distinct from the judicial foreclosure. *See In re Erickson*, 566 F. App'x 281, 284 (5th Cir. 2014) ("Both this court and the Texas Courts of Appeals have held that judicial foreclosure and" non-judicial foreclosure—i.e., foreclosure "under the power of sale in a deed of trust"—"are separate and distinct remedies . . . ." (first citing *Thurman v. FDIC*, 889 F.2d 1441, 1445 (5th Cir. 1989); then citing *Kaspar v. Keller*, 466 S.W.2d 326, 328 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.); then citing *Am. Nat. Ins. Co. v. Schenck*, 85 S.W.2d 833, 839 (Tex. Civ. App.—Amarillo 1935, no writ))).

Naumann and Gloier's assertion is plainly refuted by Ditech's complaint (and even the portion of Ditech's complaint they block-quote). Ditech's prayer requested both non-judicial and judicial foreclosure. Even though Ditech was ultimately forced to elect one remedy, *see Kaspar*, 466 S.W.2d at 328-29, there is no requirement that Ditech initially plead only consistent remedies, *see* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Phillips v. FDIC (In re Phillips)*, 124

No. 17-50616

## II.

Resolution of this appeal depends on the interplay of federal law governing the scope of default judgment and Texas law governing judicial foreclosure. While the district court sat in diversity—meaning state law supplies the substantive rights at issue, *see Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003)—the adequacy of Ditech's complaint is judged by federal law, specifically Federal Rule of Civil Procedure 54(c), *see Consol. Cigar Co. v. Tex. Commerce Bank*, 749 F.2d 1169, 1174 (5th Cir. 1985). Thus, in this case we look to federal law for procedure and Texas law for substance.

To determine Texas law, we first consider the decisions of the Texas Supreme Court. *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 414 (5th Cir. 2017). In the absence of definitive decisions from the Texas Supreme Court on the issues before us, "we must determine, in our best judgment, how we believe that court would resolve the issue." *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014). "In making such a determination, we 'may look to the decisions of intermediate appellate state courts for guidance.'" *ExxonMobil Corp.*, 868 F.3d at 414 (quoting *Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)).

Having sorted out whose law applies where, we proceed to the core issue this case presents: whether the default judgment in this judicial foreclosure proceeding exceeded the scope of relief requested in Ditech's complaint, contravening Rule 54(c).

## III.

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the

---

B.R. 712, 719 (Bankr. W.D. Tex. 1991) ("With respect to judicial foreclosure, an election of remedies does not occur unless a judgment of foreclosure is obtained.").

4

pleadings."[3] This contrasts with "[e]very other final judgment," which "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). This distinction has a long lineage, as it "was well settled even before the adoption of the Rules of Civil Procedure that in rendering a default judgment the Court can only give to the plaintiff such relief as was proper upon the face of the bill." *See Nat'l Disc. Corp. v. O'Mell*, 194 F.2d 452, 456 (6th Cir. 1952) (citing *Thomson v. Wooster*, 114 U.S. 104, 113-14 (1885)).

Despite Rule 54(c)'s pedigree, we have not yet had an opportunity to address the appropriate standard for determining whether a default judgment differs in kind from or exceeds in amount the relevant pleadings.[4] We are convinced that the proper standard flows from the reason for the rule itself— to ensure a party pondering default has meaningful notice, based on the

---

[3] Before 2007, default judgments were governed by the then-current Rule 54(c), which stated in relevant part: "A judgment by default shall not be different in kind from or exceed in amount that *prayed for in the demand for judgment*." Fed. R. Civ. P. 54(c), 308 U.S. 645 (1938) (repealed 2007) (emphasis added). Based on this language, up until 2007, many courts limited their consideration to the complaint's prayer for relief section. *See, e.g.*, *Silge v. Merz*, 510 F.3d 157, 159-60 (2d Cir. 2007). Following the 2007 revision—which states that the focus is "what is demanded in the pleadings"—some courts have read the revised language as widening the relevant materials that may be considered when crafting a remedy for a default judgment. *See, e.g.*, *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 606 (7th Cir. 2008) (considering the relief sought in the plaintiff's complaint and motion for entry of default judgment). But other courts have questioned whether the revision implies a substantive change. *See Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 40 (1st Cir. 2012); *see also* Fed. R. Civ. P. 54 advisory committee's note (2007 amendment) ("The language of Rule 54 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.").

In any event, both parties in this case rely on pre-revision cases, and neither argues that the revision broadened what may be considered for a default judgment. Thus, we assume without deciding that the scope of permissible relief is limited to what Ditech demanded in its prayer for relief.

[4] Indeed, most of our past decisions simply note that the rules for default and non-default judgments are different and then move on to the business of determining the correct result in the latter situation. *See, e.g.*, *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975); *Equity Capital Co. v. Sponder*, 414 F.2d 317, 319 n.1 (5th Cir. 1969).

complaint alone, of her exposure in the event of default.[5] *See Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007); *cf. Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) (holding that, in the context of non-default judgments, "[t]he discretion afforded by Rule 54(c) . . . assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant"). As a leading and often-cited treatise puts it:

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2663 (4th ed. 2014) (footnote omitted), *cited with approval in Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 40 (1st Cir. 2012), *and Silge*, 510 F.3d at 159.

Administration of Rule 54(c) is often straightforward. For instance, a request to enjoin a particular corporate officer from exercising control over a corporation does not permit, upon default, appointment of a receiver to manage the corporation. *See Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 272 (9th Cir. 1964). Likewise, an original complaint's assertion of securities- and common-law-fraud theories will not adequately appraise a defaulting defendant of his exposure to treble damages under RICO. *See In re Crazy Eddie*

---

[5] As Naumann and Gloier defaulted without appearing, we do not address whether this is the proper standard when a party appears but subsequently fails to plead or otherwise defend the action.

*Sec. Litig.*, 948 F. Supp. 1154, 1163-64 (E.D.N.Y. 1996). And a failure to request prejudgment interest or compensatory damages whatsoever will cut off those avenues of relief upon default. *See Hooper-Haas*, 690 F.3d at 40 (compensatory damages); *Silge*, 510 F.3d at 159-60 (prejudgment interest). But a prayer for breach-of-contract damages will allow recovery of breach-of-contract damages upon default, even if the exact dollars and cents were not computed and pleaded in advance. *See Henry v. Sneiders*, 490 F.2d 315, 317 & n.2 (9th Cir. 1974). This case also presents a straightforward application of Rule 54(c), but a digression into Texas law is needed to see why.

Under Texas law, a mortgagee like Ditech has at least two options when its mortgagor defaults: it may sell the property via a non-judicial foreclosure under the express powers granted to it in a deed of trust or it may (as here) bring a judicial foreclosure action. *See Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "The court may order judicial foreclosure upon proof 'establishing the debt and fixing the lien.'" *Maldonado v. CitiMortgage, Inc.*, 676 F. App'x 282, 284 (5th Cir. 2017) (per curiam)[6] (quoting *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ)).

This is all well-settled and not at issue in this appeal. What this appeal concerns is the nature of a judgment of judicial foreclosure. Whether Ditech's request for a judgment of judicial foreclosure supplied meaningful notice of the kind and amount of relief the district court ultimately gave depends on what a judgment of judicial foreclosure entails. For their part, Naumann and Gloier complain that the judgment's provision for future issuance of a writ of possession exceeds Ditech's prayer for a judicial foreclosure.

---

[6] We cite this unpublished decision because we consider its summary of Texas law to be sound.

No. 17-50616

We must disagree. The order that a writ of possession shall issue in favor of a future purchaser followed Texas's process for enforcing a foreclosure judgment. Under Texas law, a judgment of foreclosure must provide "that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property." Tex. R. Civ. P. 309. The judgment also must— except in a few circumstances not relevant here—provide "that an order of sale shall issue to any sheriff or any constable within the State of Texas, directing him to seize and sell the [property] as under execution, in satisfaction of the judgment." *Id.*; *see Woodglen Homeowners Ass'n v. Odom*, 452 S.W.3d 489, 490 (Tex. App.—San Antonio 2014, no pet.). And once an officer executes the order of sale, the officer must "proceed by virtue of such order of sale to place the purchaser of the property sold thereunder in possession thereof within thirty days after the day of sale." Tex. R. Civ. P. 310.[7] A writ of possession is a means to achieve just that: the writ is a form of process "employed to enforce a judgment to recover the possession of land by commanding the sheriff to enter on the land and give possession of it to the person entitled under the judgment." *See* 34 Tex. Jur. 3d *Enforcement of Judgments* § 210 (1979); *see also Acevedo v. Stiles*, No. 04-02-00077-CV, 2003 WL 21010604, at *1 (Tex. App.—San Antonio May 7, 2003, pet. denied) (mem. op.). Issuance of the writ is an appropriate means to enforce an order of foreclosure of a mortgage in favor of a purchaser.

---

[7] While Rules 309 and 310 are styled as those of civil *procedure*, that does not render them strictly *procedural* for purposes of sorting out whose law applies. "Where the state rule reflects a substantive state policy not in conflict with the plain meaning of the federal rule, then the state rule is the rule of decision and should be applied under the terms of the *Erie* doctrine." *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). But where "a federal procedural rule is 'clearly applicable,' then it applies unless unconstitutional or outside the scope of the Rules Enabling Act." *Id.* (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 747-49 (1980)). Neither party identifies a federal procedural rule that "directly collides" with Rules 309 and 310, and thus we assume without deciding that they supply the rules of decision. *See id.*

No. 17-50616

*See* 10 Tex. Jur. Pl. & Pr. Forms § 198:1 (2d ed. 1972) (citing Tex. R. Civ. P. 310).

From this, we conclude that Ditech's demand for judicial foreclosure gave meaningful notice that, in the event of default, a writ of possession would issue in favor of the foreclosure-sale purchaser. Texas's process of enforcing a judicial foreclosure—and specifically its mechanism for enforcing the foreclosure sale— entails issuance of the writ. Accordingly, in this case the judgment's provision for future issuance of the writ did not expand or alter the kind or amount of relief prayed for by Ditech. *Cf. Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, 412 F. App'x 230, 233 (11th Cir. 2011) (per curiam) (holding that the plaintiff's demand only for an accounting did not foreclose monetary relief under Rule 54(c) because an accounting action entails compelling the defendant to pay over money owed). As the relief the judgment granted did not "differ in kind from" or "exceed in amount" the relief requested in Ditech's prayer, the couple's asserted basis for vacating the default judgment fails.[8]

\*     \*     \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[8] Naumann and Gloier also argue that principles of due process preclude a default judgment from exceeding the relief demanded in the complaint. Relying on this fair notice and reliance reasoning, we have hinted that Rule 54(c) safeguards due-process rights. *See Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 185 (5th Cir. 1992) ("Rule 54(c), and for that matter fundamental fairness, dictate that a judgment by default operates as a deemed admission only as to the relief requested in the complaint."). Whether or not Rule 54(c) has some constitutional significance, neither party argues that daylight exists between the standard espoused by Rule 54(c) and the requirement of due process. Thus, we assume without deciding that such a due-process claim is available and that the standard governing such a claim mirrors Rule 54(c)'s standard. As the Rule 54(c) attack fails, so too does any due-process challenge.