# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 14, 2020

No. 18-20794

Lyle W. Cayce
Clerk

In the Matter of:  MEMORIAL PRODUCTION PARTNERS, L.P.,

Debtor

AERA ENERGY LLC; NOBLE ENERGY INC.; SWEPI LP,

Appellants

v.

BETA OPERATING COMPANY, L.L.C.,

Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-412

Before STEWART, CLEMENT, and HO, Circuit Judges.

PER CURIAM:*

Appellants Aera Energy LLC's, Noble Energy, Inc.'s, and SWEPI LP's (the Previous Owners) appeal the district court's affirmance of a bankruptcy

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20794

court's grant of summary judgment to appellee Beta Operating Co., approving Beta's bankruptcy plan. For the following reasons, we affirm.[1]

I.

This case has its origins in the Previous Owners' 2007 sale of their interest in a lease of certain offshore oil and gas fields—the Beta Interests—to Pacific Energy Resources Ltd. (PERL). Inherent in offshore oil and gas production is the potential of significant future liabilities. One of those liabilities is the cost of ending production. Operators must decommission offshore oil and gas wells—colloquially, plug and abandon them—at the end of their life. 30 C.F.R. § 250.1703. Every lessee of an offshore oil and gas field—past and present—is jointly and severally liable for decommissioning the wells in their field. *Id.* § 556.604(d).

It is logical, then, for a seller of an offshore oil and gas lease interest to ensure that the buyer covers decommissioning costs. One of the mechanisms the Previous Owners used to do that here is a trust. When the Previous Owners sold the Beta Interests to PERL in 2007, PERL set up a trust—with it as the Settlor, the federal government as the beneficiary, and the Previous Owners as third-party beneficiaries—to hold assets to cover the cost of decommissioning the Beta Interests. The Trust Agreement—the document at issue in this case—set out the trust's terms. After PERL went bankrupt, Beta purchased the Beta Interests from PERL. When it did, it assumed PERL's obligations—including those under the Trust Agreement.

Prior to this controversy, the trust contained about $150 million of assets, comprised of cash and a $90 million Treasury Note. However, Beta wanted to substitute performance bonds—or sureties—for the securities in the trust. The government consented to the substitution; the Previous Owners did

---

[1] Judge Clement concurs in the judgment only.

No. 18-20794

not. Beta tried again after it went bankrupt, asking the bankruptcy court to approve the substitution as part of its reorganization plan. The bankruptcy court did so, concluding that the Trust Agreement permitted the substitution regardless of the Previous Owners' objections and that, therefore, the reorganization plan did not impair any of the Previous Owners' rights. *Beta Operating Co. v. Aera Energy, LLC (In re Mem'l Prod. Partners, L.P.)*, 581 B.R. 206, 217–18 (Bankr. S.D. Tex. 2018). The district court affirmed, though its reasoning differed. *Beta Operating Co. v. Aera Energy, LLC (In re Mem'l Prod. Partners, L.P.)*, 2018 WL 5634142, at *2–4, *6 (S.D. Tex. Oct. 31, 2018).

## II.

On appeal, the Previous Owners argue that the Trust Agreement limits the assets Beta can put into the trust to cash or cash equivalents. California contract law governs the interpretation of the Trust Agreement. Since the Trust Agreement is a document—and since extrinsic evidence is unnecessary to interpret it—we do not defer to the district court's analysis. *See ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 415 (5th Cir. 2017).

That said, the district court is correct. As the court noted, the Trust Agreement broadly defines the assets—which the agreement calls the "Trust Funds"—that Beta may use to satisfy its obligations under the agreement. 2018 WL 5634142, at *3. "Trust Funds" refers to the Treasury Note PERL initially provided and "all other funds . . . deposited into the Trust Account . . . and other property in the Trust Account." "Other property" can fairly refer to performance bonds. *Cf.* RESTATEMENT (THIRD) OF TRUSTS § 40 cmt. b (Am. Law. Inst. 2003) (noting that choses in action and contingent future interests can be trust property).

That interpretation is consistent with the other documents pertaining to the Previous Owners' sale of the Beta Interests. When the Previous Owners sold the Beta Interest to PERL in 2007, they executed four separate Purchase

and Sale Agreements (PSAs). Each document incorporated as an exhibit a form trust agreement, which was the Trust Agreement, or at least a form of the document that would become the Trust Agreement. Those attached form trust agreements relate to the "Governmental Bond," which the PSAs said was a bond that PERL had to provide the government to cover the cost of decommissioning the Beta Interests.

Given the relatively contemporaneous nature of the PSAs and the Trust Agreement, the identity of the parties to all the agreements, and the fact that all the documents involve the same subject matter, the PSAs' definition of "Governmental Bond" sheds light on what funds Beta may use to fulfill its obligation under the Trust Agreement. CAL. CIVIL CODE § 1642; *see Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 3 Cal. 5th 744, 759 (2017) (discussing the rule); *Holguin v. Dish Network LLC*, 229 Cal. App. 4th 1310, 1320 (2014) (same). Like the Trust Agreement, the PSAs provide an expansive list of assets that may be the Governmental Bond. More importantly, they allow for performance bonds to satisfy the Governmental Bond requirement.

Then there are the documents the Previous Owners executed after Beta acquired the Beta Interests from PERL. The Previous Owners initially objected to Beta's acquisition of the Beta Interests. To resolve their objections, they, Beta, and PERL entered into a Settlement Agreement. The settlement references the Trust Agreement without altering the expansive definition of "Trust Funds." Indeed, the Settlement Agreement references a "Governmental Bond" that, just like the PSAs, could be a performance bond. And when Beta and the Previous Owners amended the Trust Agreement to reflect Beta's ownership and the government's new decommissioning cost-estimate, neither party altered the agreement's broad definition of "Trust Funds."

Thus, the terms of the Trust Agreement, the PSAs, the Settlement Agreement, and the 2010 amendment to the Trust Agreement all show that

No. 18-20794

Beta may fulfill its bonding obligation under the Trust Agreement with performance bonds. Since the Previous Owners are sophisticated business entities, we will not read into their contracts restrictions that they could have—but did not—bargain for.

And we especially will not do so here because allowing Beta to fund the trust with performance bonds does not undermine the trust's purpose. The trust exists to ensure that there are funds to cover the cost of decommissioning the Beta Interests. Quality performance bonds do that just as well as cash or cash equivalents—after all, federal regulations permit operators to use such bonds to cover their lease obligations. *See* 30 C.F.R. §§ 556.900, 902(b), 902(e)(1). And even the Previous Owners allowed for performance bonds to constitute the "Aera Bond"—a bond that the PSAs required PERL, and later, Beta, to provide the Previous Owners to cover decommissioning costs if the government lowered the Governmental Bond requirement below $90 million.

Thus, the Trust Agreement allows Beta to fund the trust with performance bonds. And as the district court properly concluded, it also permits the trustee to substitute Beta's performance bonds for other securities in the trust with the government's consent. *See* 2018 WL 5634142, at *3.[2]

We affirm.

---

[2] The Previous Owners claim that Beta has not put the performance bonds in the trust and therefore has not complied with the Trust Agreement's terms. But Beta's compliance with the Trust Agreement is a separate issue from whether the Trust Agreement permits Beta to substitute performance bonds for securities in the trust.